EMPLOYERS REINSURANCE CORPORATION, Appellant,

v.

WORTHINGTON CUSTOM PLASTICS, INC., a.k.a. Warren
Molded Plastics, Inc., et al., Appellees.

[Cite as *Employers Reinsurance Corp. v. Worthington Custom
Plastics, Inc.* (1996), 109 Ohio App.3d 550.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE05–618.

Decided Feb. 27, 1996.

552

*Day, Cook & Gallagher* and *David L. Day,* for appellant.

*Vorys, Sater, Seymour & Pease, Thomas M. Taggart* and *Joseph A. Brunetto,* for appellees Worthington Custom Plastics, Inc., Buckeye International, Inc., and Buckeye Steel Castings.

*Thompson, Hine & Flory, William C. Wilkinson* and *R. Michael Clark,* for appellees Mead Corporation and Forest City Enterprises, Inc.

*Judson W. Calkins,* for appellee May Department Stores, Inc.

---

PETREE, Presiding Judge.

This matter is before this court upon appeal of plaintiff, Employers Reinsurance Corporation, from a judgment of the Franklin County Court of Common Pleas requiring plaintiff to indemnify defendants, Worthington Custom Plastics, Inc., Buckeye International, Inc., Buckeye Steel Castings, Inc., The May Department Stores Co., The Mead Corporation, and Forest City Enterprises, Inc., for payments made by defendants into the Disabled Workers' Relief Fund ("DWRF").

Upon appeal, plaintiff sets forth eight assignments of error:

"I. The trial court erred in determining and declaring that the specific excess workmens' compensation agreements in question are 'known as the Insurance Policies,' and in construing them in favor of the defendant-appellees.

"II. The trial court erred in determining and declaring that the amounts paid by defendants pursuant to Sec. 4123.411, Rev.Code, as self-insured employers subsequent to August 22, 1986, constitute 'benefits' covered by the specific excess workmen's compensation agreements between Plaintiff and defendants.

"III. The trial court erred in determining and declaring that the 1986 amendment to 4123.411, Rev.Code, making the payments required thereunder directly attributable to and dependent upon specific workers' compensation claims, brings such payments within the Plaintiff's policy definition of 'loss' as 'amounts actually paid in cash by the Employers in payment of benefits.'

"IV. The trial court erred in determining and declaring that the amounts paid pursuant to Sec. 4123.411, Rev.Code, by the self-insured employer defendants subsequent to August 22, 1986, constitute 'loss sustained by the Employer

because of liability imposed upon the Employer' by the Ohio workers' compensation act.

"V. The trial court erred in determining and declaring that the risks assumed by both parties under the specific excess workmen's compensation reinsurance agreements may be increased by the amendment of a statute subsequent to the date the reinsurance agreements became effective.

"VI. The trial court erred in determining and declaring that the amendment of Sec. 4123.411(C), Rev.Code, effective August 22, 1986, may be applied to impose liability on Plaintiff under the reinsurance agreements in question.

"VII. The trial court erred in determining and declaring that Sec. 4123.411, Rev.Code, also known as the Disabled Workers' Relief Fund statute, does not constitute a retroactive law in violation of Article II, Section 28, of the Ohio Constitution nor does it effect an unconstitutional impairment of the parties' obligations under the policies in violation of Article II, Section 28, of the Ohio Constitution and Article I, Section 10, of the U.S. Constitution.

"VIII. The trial court erred in determining and declaring that payments made by the self-insured employer Defendants pursuant to Section 4123.411, Rev.Code, subsequent to August 22, 1986, are covered by the specific excess workmens' compensation agreements issued to the defendants."

In 1953, the General Assembly enacted R.C. 4123.412, which created the DWRF. DWRF payments are made to persons who are permanently and totally disabled as a result of occupational injury or disease and whose workers' compensation benefits, when combined with Social Security disability benefits, fall below a statutorily mandated minimum amount.

From 1953 to 1959, DWRF was funded from the state's general revenues. In 1959, the General Assembly enacted R.C. 4123.411, which provided for an employer payroll assessment to finance the DWRF. In its original form, R.C. 4123.411 required the Industrial Commission of Ohio to levy an assessment against all employers at a rate not to exceed $.03 per $100 of payroll. Since 1959, R.C. 4123.411 has been repeatedly amended in an ongoing attempt to adequately finance the DWRF. Amendments in 1975 and 1980 increased the employer payroll assessment rate.

Effective August 22, 1986, the General Assembly amended R.C. 4123.411 and dramatically altered the mechanism by which the DWRF was funded. Pursuant to amended R.C. 4123.411, non-self-insured private fund employers, county and taxing district employers, and the state of Ohio as an employer remain subject to the employer payroll rate assessment. However, R.C. 4123.411(C) requires that self-insured employers directly compensate the Ohio Bureau of Workers' Compensation for all amounts paid to qualifying employees regardless of the date of

their injury. Under this provision, the bureau makes the DWRF payment to the qualified employee and thereafter collects the payment from the self-insured employer. The constitutionality of this new funding scheme was upheld in *Wean Incorporated v. Indus. Comm.* (1990), 52 Ohio St.3d 266, 557 N.E.2d 121.[1]

Defendants are self-insured employers under the Ohio Workers' Compensation Act and pay workers' compensation benefits directly to their employees who are disabled as the result of occupational injury or disease. Because defendants bear the risk of workers' compensation claims made by their own employees, defendants chose to spread some of this risk by purchasing insurance from plaintiff, a workers' compensation reinsurance company. In exchange for a premium, plaintiff agrees to reimburse defendants for workers' compensation payments made by the defendants in excess of a specified retention amount. Thus defendants bear the risk of payments below the retention amount but guard against payments in excess of that amount. Plaintiff provided reinsurance to defendants under various specific excess workers' compensation agreements in effect from approximately 1953 to 1981.

Prior to 1986, defendants were subject to the DWRF payroll assessment pursuant to R.C. 4123.411. However, as a result of the August 22, 1986 amendment to R.C. 4123.411(C), defendants are now required to reimburse the bureau dollar-for-dollar for amounts paid to those employees who qualify for DWRF payments, rather than paying an unallocated tax based merely on payroll. Defendants sought indemnification from plaintiff for the DWRF payments made pursuant to R.C. 4123.411(C) under the aforementioned reinsurance agreements.

On November 19, 1993, plaintiff filed a complaint seeking a declaratory judgment that it is not required to indemnify defendants for DWRF payments made by defendants pursuant to R.C. 4123.411(C). The trial court found that plaintiff was required to indemnify defendants under the terms of the reinsurance agreements issued by plaintiff to defendants.

As plaintiff's first, second, third, fourth, fifth, sixth and eighth assignments of error are all interrelated, we will address them together.

Section I of the agreement, entitled **"Application of Agreement,"** provides, in part:

"This agreement applies to loss sustained by the Employer because of liability imposed upon the Employer by:

"(a) the workmen's compensation act of [Ohio.]

" * * *

---

1. For a detailed discussion of the DWRF, see *Wean* and Fulton, Ohio Workers' Compensation Law (1991) 242–245, Section 10.7.

"[O]n account of personal injuries and occupational diseases sustained, by employees employed by the Employer and engaged in business operations specified in the Schedule or in such other business operations of the Employer as are incidental to those specified, as a result of occurrences taking place at or after the effective date specified in the Schedule."

Section IV defines the terms "occurrence" and "loss" as follows:

"(e) '[O]ccurrence', as applied to personal injuries, shall mean 'accident.' Occupational disease sustained by each employee shall be deemed to be a separate occurrence and the occurrence shall be deemed to take place on the date upon which the employee ceases work as a result of such occupational disease;

"(f) 'loss' shall mean only such amounts as are actually paid in cash by the Employer in payment of benefits under the applicable workmen's compensation act, in settlement of claims, or in satisfaction of award or judgments; but the word 'loss' shall not include claim expenses nor salaries paid to employees of the Employer[.]"

■ Under the express terms of the agreements, plaintiff is required to indemnify defendants for "loss sustained by [defendants] because of liability imposed upon [defendants] by * * * the workmen's compensation act of [Ohio] * * * on account of personal injuries and occupational diseases sustained, by employees employed by [defendants]." Plaintiff contends that DWRF payments do not fall within the language of the agreements. We disagree.

R.C. 4123.411(C) clearly imposes liability on defendants to reimburse the bureau for all DWRF payments made to defendants' injured employees. This liability is imposed upon defendants as part of the Workers' Compensation Act of Ohio. Only employees who are permanently and totally disabled as the result of work-related injury or disease are entitled to DWRF payments. Therefore, the recipients of the DWRF payments are entitled to such payments "on account of personal injuries or occupational diseases." The DWRF payments made by defendants are covered by the agreements if defendants' liability for such payments causes them to sustain a "loss," as that term is defined in the agreements.

The agreements define "loss" as "such amounts as are actually paid in cash by [defendants] in payment of benefits under the applicable workmen's compensation act." DWRF payments fall within this definition. First, the DWRF payments are amounts paid in cash by defendants. The agreements do not require defendants to make payments directly to the injured employee as a condition of coverage. To the contrary, the agreements state that plaintiff will cover "losses" imposed "because" of liability imposed by the Workers' Compensation Act. Although the DWRF payments made by defendants since August 22,

1986 have been sent to the bureau rather than directly to defendants' eligible employees, it is undisputed that the payments made to the bureau are specifically attributable to the individual workers' compensation claims of defendants' former employees and are in an amount exactly equal to that received by those employees from the bureau. In short, the bureau merely acts as a clearinghouse for the DWRF payments.

Second, DWRF payments made by defendants are "in payment of benefits." Plaintiff contends that DWRF payments are not "benefits" but are "assessments." However, in *Armco, Inc. v. N. Assur. Co. of Am.* (1994), 99 Ohio App.3d 545, 651 N.E.2d 433, the Butler County Court of Appeals held that DWRF payments are "benefits" as that term was used in a reinsurance policy similar to the agreements at issue in the instant case. In *Armco*, the self-insured employer sought indemnification for DWRF payments under a reinsurance policy which contained the following language:

" 'I. **Application of Policy.** This policy applies to loss sustained by the insured [Armco] on account of:

" 'A. compensation *and other benefits* required of the insured [Armco] by the workmen's compensation law * * *.

" ' * * *       .

" 'as a result of injury (1) by accident occurring during the policy period * * *.

" ' * * *

"(f) **Loss.** The word "loss" shall mean only such amounts as are actually paid in cash by the insured [Armco] in payment of benefits under the workmen's compensation law, in settlement of claims or in satisfaction of awards or judgment; but the word "loss" shall not mean claim expenses, salaries paid to employees of the insured, nor [*sic*] annual retainers.' " (Emphasis *sic*.)

The court reasoned that, while DWRF payments are not "workers' compensation," they are "other benefits required of the insured [Armco] by the workmen's compensation law" within the meaning of the reinsurance policy because DWRF was created by the General Assembly pursuant to Section 35, Article II, Ohio Constitution and the statute sections dealing with DWRF are integrated into the workers' compensation chapter in the Revised Code.

The language in the agreements at issue is nearly identical to that construed in the *Armco* case. Thus, applying the holding of *Armco* to the facts of the instant case, we conclude that DWRF payments constitute benefits within the meaning of plaintiff's agreements.

Plaintiff characterizes defendants' payments to the bureau as "assessments," rather than "benefits," based on the fact that the bureau pays DWRF benefits to

employees and is then reimbursed by defendants. Plaintiff's characterization focuses on the method of payment of DWRF benefits by defendants rather than on the fact that the DWRF payments constitute benefits to the employees who receive the payments. The DWRF payments are liabilities or losses to defendants, but are benefits to the employees who receive them. Even if DWRF payments could be described as assessments, they are certainly within the definition of "losses" to defendants and "benefits" to the employees who receive them and are thus covered under the agreements.

In addition to characterizing DWRF payments as assessments, plaintiff suggests that the term "benefits" should be construed as having the same meaning as that contained in R.C. 4123.35(B) and 4123.84(F). Under R.C. 4123.35(B), an employer's election to become self-insured applies to the payment of compensation, medical, surgical, nursing and hospital services and death benefits. R.C. 4123.84(F) states that "[a]s used in division (A)(3)(b) of this section, 'benefits' means payments by a self-insuring employer to, or on behalf of, an employee for a hospital bill, a medical bill to a licensed physician or hospital, or an orthopedic or prosthetic device."

We cannot agree that the term "benefits" as it is used in the agreements at issue must be limited to the definitions used in the foregoing statutory sections. The agreements neither define the term "benefits" nor refer to either R.C. 4123.35(B) or 4123.84(F) or any other statutory provision. If plaintiff had desired to limit its liability to "benefits" as defined by R.C. 4123.35(B), 4123.84(F) or any of the statutory provisions contained in R.C. Chapter 4123, it had ample opportunity to state as much within the agreements. Instead, plaintiff chose not to define the term "benefits" at all.

Ambiguities in a contract of insurance "should be construed strictly against the insurer that authored its terms and liberally to favor the insured's coverage." *Ambrose v. State Farm Fire & Cas.* (1990), 70 Ohio App.3d 797, 800, 592 N.E.2d 868, 870–871.[2] Furthermore, any reasonable construction which

---

**2.** Plaintiff cites *Loblaw, Inc. v. Employers' Liab. Assur. Corp.* (1981), 85 A.D.2d 880, 446 N.Y.S.2d 743, for the proposition that Ohio's principles of construction of an insurance contract should not apply to this case due to the sophistication of appellees. However, plaintiff fails to cite any Ohio case which suggests that ambiguities contained in policy language should not be construed in favor of the insured when the insured is either a large corporation or a self-insured employer under the workers' compensation law. Moreover, even if we were to accept plaintiff's suggestion that the rules of liberal construction in favor of the insured do not apply to the agreements at issue, we must still apply the general rule of contracts, that is, that ambiguous contractual language will be construed against the drafter of the contract. *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 80, 40 O.O.2d 87, 89, 228 N.E.2d 304, 307. This general rule of law has been applied to noninsurance commercial contracts. See *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 413, 16 O.O.3d 441, 442–443, 406 N.E.2d 515, 517.

results in coverage of the insured must be adopted by the trial court. *Nationwide Mut. Ins. Co. v. Wright* (1990), 70 Ohio App.3d 431, 434, 591 N.E.2d 362, 365. "The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490.

Plaintiff has based its denial of coverage of DWRF payments entirely on limitations, exclusions and qualifications to policy coverage that have no basis in the language of the agreements at issue. Thus, we conclude that the language of the agreements pertaining to benefits clearly includes DWRF payments within the scope of coverage.

■ Plaintiff further contends that it should not be required to indemnify defendants for the DWRF payments because defendants became liable for the payments as a result of the 1986 amendment to R.C. 4123.411, which was enacted after the effective dates of the policies. Plaintiff contends that coverage for DWRF payments should be denied, as such coverage was not within the contemplation of the parties at the time the agreements were made. In short, plaintiff argues that its liability under the agreements should be fixed as of the effective dates of the agreements.

In *Aas v. Avemco Ins. Co.* (1976), 55 Cal.App.3d 312, 319, 127 Cal.Rptr. 192, 196, the court stated, "When the insurer agrees to indemnify the policyholder for 'loss by reason of the liability imposed upon him by law' it may take the risk that the law will impose a greater liability than was contemplated at the time of contracting." The *Avemco* court did not apply this rule to the case before it, however, as the policy in question contained no such broad promise of indemnity.

However, in the instant case, the reinsurance agreements drafted by plaintiff do contain such broad promise of indemnity. As noted previously, the express terms of the agreements require plaintiff to indemnify defendants for "loss sustained by the [defendants] because of liability imposed upon [defendants] by * * * the workmen's compensation act of [Ohio]." Plaintiff, as drafter of the agreements, could have included language expressly limiting coverage to include only losses sustained by defendants because of liability imposed by the Workers' Compensation Act as it existed at the time the agreements were executed or only as long as the policies remained in effect. As a result of plaintiff's failure to include such limiting language, plaintiff took the risk that the Workers' Compensation Act would impose greater liability than was contemplated at the time the agreements were issued.

Furthermore, in an area of law as highly regulated as the area of workers' compensation law, plaintiff could reasonably have been expected to realize that

further legislation upon the topic of workers' compensation was highly probable, if not a virtual certainty. However, plaintiff chose to use only the broad language "the workmen's compensation act" in defining the extent of its liability and did not include language limiting its liability to the Workers' Compensation Act at the time the agreements were executed. Because we must construe language in a contract of insurance in favor of the insured and against the party drafting the contract, we conclude that the language "the workmen's compensation act" must be construed to include the 1986 amendment to R.C. 4123.411(C).

■ Plaintiff also contends that the language used in Section XIII of the agreement limits its liability only to changes made by endorsement issued by plaintiff. That section states:

"**CHANGE OR WAIVER.** The terms of this agreement shall not be waived or changed except by endorsement issued to form a part hereof, signed by a duly authorized representative of the Corporation."

Section I of the agreement is where defendants would ordinarily look to find the extent of coverage provided. If plaintiff had meant to limit coverage to include only losses under the Workers' Compensation Act as it existed at the time the agreements were executed or only as long as the policies remained in effect, it could have so stated within the coverage clause itself. Having failed to do so, we conclude that greater weight should be given to the language within the coverage clause than to the general limiting language of Section XIII.

Accordingly, the first, second, third, fourth, fifth, sixth and eighth assignments of error are not well taken.

■ By the seventh assignment of error, plaintiff contends that the application of amended R.C. 4123.411 to claims arising prior to its effective date is unconstitutional. However, as previously noted, the constitutionality of R.C. 4123.411 has already been determined by the Supreme Court of Ohio in *Wean, supra,* wherein the court held by syllabus rule that "R.C. 4123.411(C), as amended August 22, 1986, does not violate the retrospective provision of Section 28, Article II of the Ohio Constitution." The *Wean* court described the change in the law as remedial rather than substantive and concluded that it did not violate the constitutional ban against retroactive laws. The court thus found that "self-insured employers are currently responsible to reimburse the bureau for all past, present and future employees who are eligible for the DWRF." *Id.,* 52 Ohio St.3d at 269, 557 N.E.2d at 125. We conclude that, if self-insured employers can constitutionally be made to incur the losses imposed by R.C. 4123.411(C), it thus follows that insurers, such as plaintiff, who contractually agree to indemnify the self-insured employers for such losses can constitutionally be made to provide such indemnity.

■ Plaintiff further argues that R.C. 4123.411 unconstitutionally impairs its contract rights in violation of Section 28, Article II, Ohio Constitution and Article I, Section 10 of the United States Constitution.

■ Both the United States and the Ohio Constitutions prohibit the state from enacting legislation that impairs the obligation of contracts. Even though the Contract Clause language is unequivocal, the provisions and limitations it imposes are not absolute and must be accommodated to the state's inherent police power to promote the public welfare. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.* (1983), 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569.

■ In *Energy Reserves,* the United States Supreme Court set forth a three-step balancing test to examine legislation under the Contract Clause. First, a court must inquire whether the legislation has, in fact, operated as a substantial impairment of a contractual obligation. Second, if a substantial impairment exists, those urging the constitutionality of the statute must show that a significant and legitimate public purpose behind the legislation exists. Third, the court must examine the legislature's action in light of the statute's public purpose to see whether the adjustment of the rights and liabilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the statute's adoption.

■ In making the determination regarding the first part of the test, the court must decide whether the impairment of the contract is substantial by examining the extent to which "reasonable expectations under the contract are disrupted." *Id.,* 459 U.S. at 411, 103 S.Ct. at 704, 74 L.Ed.2d at 580–581.

We conclude that plaintiff's reasonable expectations under the agreements were not disrupted by the 1986 amendment to R.C. 4123.411. As this court has previously discussed, the broad language of the agreements expressly link plaintiff's obligations to defendants to the "workmen's compensation act." The language used in the agreements does not limit plaintiff's obligation to the Workers' Compensation Act as it existed at the time the agreements were issued or to the time the agreements remained in effect. Furthermore, it is not within the reasonable expectations of contracting parties to expect no changes in the law, particularly in an industry or area of the law that is highly regulated. Because the area of workers' compensation is highly regulated and because appellant's obligations under the agreements are specifically linked to the Workers' Compensation Act, we conclude that plaintiff must have expected, or at least should have expected, that changes in the Workers' Compensation Act, including the amendment to R.C. 4123.411(C), would affect its liability under the agreements.

Having determined that plaintiff has failed to establish that amended R.C. 4123.411(C) has operated as a substantial impairment of plaintiff's contract obligation with defendants, we find no violation of the Contract Clause.

Accordingly, plaintiff's seventh assignment of error is not well taken.

For all the foregoing reasons, plaintiff's assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

LAZARUS and STRAUSBAUGH, JJ., concur.

DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.