[Cite as *State ex rel. Ford Motor Co. v. Indus. Comm.*, 2015-Ohio-181.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel.<br>Ford Motor Company, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 13AP-762 |
| | | |
| The Industrial Commission of Ohio and<br>Bryan Craft, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on January 22, 2015

*Timothy J. Krantz,* for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

*Bevan & Associates,* and *David S. Bates,* for respondent Bryan Craft.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1}  Ford Motor Company filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to relieve it of a duty to pay the Ohio Bureau of Workers' Compensation ("BWC") funds to reimburse it for payments to Bryan Craft.

{¶ 2}  In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings.  The parties stipulated

the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision containing detailed findings of fact and conclusions of law appended hereto. The magistrate's decision includes a recommendation that we deny the request for a writ.

{¶ 3} Ford Motor Company has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for a full independent review.

{¶ 4} The facts in the case are not in dispute. Ford Motor Company has not objected to the findings of fact, so the findings of fact in the magistrate's decision are hereby adopted.

{¶ 5} Ford Motor Company does object to the application of the law to the uncontested facts. Specifically, the objections are:

> OBJECTION NO. 1
>
> The Magistrate erred in failing to find that DWRF benefits constitute compensation and therefore, falling under the 2-year "limitation" provision in R.C. §4123.52, regarding retroactive payment of compensation.
>
> OBJECTION NO. 2
>
> Although the Magistrate found that the BWC failed to properly administer the claimant's claim, the Magistrate erred in failing to find that the "doctrine of laches" precludes the BWC from charging Ford DWRF payments going back more than thirteen-years.

{¶ 6} Bryan Craft was found to be entitled to permanent total disability compensation back in the 1990's. Early in the period when he began receiving the benefits, repeated inquiries were made to ascertain whether he was entitled to additional compensation from the Disabled Workers' Relief Fund ("DWRF"). Because of the money he was receiving from Social Security Disability, he was found to not be entitled to payments from DWRF at that time. The inquiries from BWC on that topic then stopped for many years.

{¶ 7} Eventually BWC sent a questionnaire to Craft to determine if his eligibility had changed. Upon receiving the answers to its questions, the BWC determined that

Craft had been entitled to funds from DWRF for many years.  The total due him was the sizable sum of $121,442.86, covering almost 13 years of back payments.

{¶ 8}  Ford Motor Company did not want to pay the $121,442.86 to reimburse the BWC and has fought paying it ever since.  At first Ford Motor Company resisted paying by pursuing appeals through the commission.  When that failed, Ford Motor Company filed this mandamus action.

{¶ 9}  The issues Ford Motor Company argues via its objections to the magistrate's decision are the same issues argued before the magistrate.  We cannot make significant improvements upon the detailed analysis set forth by our magistrate, including exposition of our past decisions on the key points.  See the magistrate's decision appended hereto.

{¶ 10} We overrule the objections to the magistrate's decision and adopt the findings of fact and conclusions of law in the magistrate's decision.  As a result, we deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

KLATT and DORRIAN, JJ., concur.

———————

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel.<br>Ford Motor Company, | : | |
| | : | |
| Relator, | : | No. 13AP-762 |
| | : | |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| The Industrial Commission of Ohio<br>and Bryan Craft, | : | |
| | : | |
| Respondents. | : | |

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on October 29, 2014

---

*Timothy J. Krantz,* for relator.

*Michael DeWine*, Attorney General, and *Stephen D. Plymale,* for respondent Industrial Commission of Ohio.

*Bevan & Associates,* and *David S. Bates,* for respondent Bryan Craft.

---

### IN MANDAMUS

{¶ 11} Relator, Ford Motor Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order by awarding Disabled Workers' Relief Fund ("DWRF") benefits to respondent Bryan Craft ("claimant") beyond two years and ordering the commission to find that the back payments are subject to the two-year limitation in R.C. 4123.52, or, in the alternative, find that the Ohio Bureau of Workers' Compensation

("BWC") failed to comply with the statute that requires prompt inquiry of the permanent total disability ("PTD") compensation status of an injured worker in order to ascertain DWRF eligibility and relieve relator of the responsibility of paying claimant beyond the two-year period.

Findings of Fact:

{¶ 12} 1. Claimant sustained three separate industrial injuries while employed by relator, a self-insured employer.

{¶ 13} 2. Following a hearing held December 7, 1990, the commission issued an interlocutory order awarding claimant PTD compensation in his 1975 claim for the period December 8, 1990 to March 19, 1991.

{¶ 14} 3. In an order mailed July 2, 1991, the commission extended the award of PTD compensation to September 1, 1991.

{¶ 15} 4. Following a hearing on October 30, 1991, the commission awarded claimant PTD compensation from September 2, 1991 and continuing. Claimant's rate of pay was $119.

{¶ 16} 5. Claimant's date of birth is December 28, 1934. As such, he was approximately 57 years of age when the commission issued its final order awarding him PTD compensation.

{¶ 17} 6. Earlier, in January 1991, the BWC sent a letter to claimant advising him that he may be entitled to DWRF benefits and requested information regarding his Social Security Disability ("SSD") benefits. The letter explains:

> When a claimant has been declared permanently and totally disabled (PTD) by the Ohio Industrial Commission, he or she may be entitled to receive a supplemental award from the Disabled Workers' Relief Fund (DWRF). Under the provisions of this fund, the benefits a claimant receives from the Bureau and the disability benefits received from the Social Security Administration are combined. The total of these benefits is subtracted from the figure established as the DWRF entry level. If the combined amount of PTD and disability social security is under our entry level amount, then the claimant is paid DWRF benefits.
>
> At the present time we are attempting to determine your eligibility to participate in the DWRF fund. However, before we can complete our computations we need additional

information regarding your social security benefits. We are, therefore, requesting that you provide us with a statement indicating the rate of the disability social security benefits you have received, before [M]edicare deductions, from 12/8/90 to 3/19/91.

{¶ 18} 7. Claimant supplied the BWC with the requested information and indicated that he was then receiving $953 per month in SSD benefits.

{¶ 19} 8. In a letter dated February 7, 1991, the BWC informed claimant that, because his total monthly compensation was currently over the maximum entitlement per week, he was not entitled to receive DWRF benefits at that time.

{¶ 20} 9. Between February 1991 through October 1995, the BWC sent correspondence continuing to indicate that, based on his weekly rate, claimant was ineligible to receive DWRF benefits.

{¶ 21} 10. In October 1998, the BWC sent a letter addressed to relator and relator's representative asking for information so the BWC could determine whether or not claimant was entitled to receive DWRF benefits.

{¶ 22} 11. The stipulated evidence contains a document apparently from claimant's file identified as a claim inquiry and date stamped October 7, 2005. That document lists claimant's birth date, the date on which he turned 65 years of age, as well as the date PTD compensation began.

{¶ 23} 12. It is undisputed that claimant turned 65 years of age on December 28, 1999.

{¶ 24} 13. In October 2012 (nearly 13 years after claimant turned 65), the BWC sent a questionnaire to relator indicating the BWC was reviewing claims paying PTD compensation and asking relator to confirm claimant's rate of pay.

{¶ 25} 14. Relator responded indicating that claimant's rate of pay was $119.

{¶ 26} 15. In an order mailed November 7, 2012, the BWC notified claimant that he was eligible to receive DWRF benefits and also informed claimant that he was entitled to receive a back payment. Specifically, the order provides:

You are eligible because [t]hrough communication with the Self Insured Employer, BWC learned that you are being paid permanent total disability and may be eligible to receive a DWRF benefit. Based on your permanent total disability

rate, you became eligible to receive DWRF effective 12/01/1999 at retirement. Your permanent total disability rate is less than the DWRF entry level.

Effective with the payment of 11/20/2012, your DWRF weekly rate will be $231.60.

You also are entitled to receive a back payment in the amount of [$]121,442.86. This payment covers dates from 12/01/1999 to 11/03/2012.

You should receive your back payment within 10 days of receiving this order. Please note that this is not a change to your PTD workers' compensation payment. If you have any deductions being taken from your PTD, they are not reflected in this order but will continue to be deducted.

You will receive 14 checks that equal your back payment of $121,442.85 mentioned above.

{¶ 27} 16. Relator appealed and a hearing was held before a staff hearing officer ("SHO") on March 6, 2013. The SHO specifically found that claimant was entitled to receive DWRF benefits and rejected relator's argument that because the BWC failed to determine claimant's eligibility in a prompt manner, the payment should be limited to the two-year limitation found in R.C. 4123.52, stating:

Said Disabled Workers' Relief Fund benefits are ordered to commence effective 12/01/1999.

Based on this order, the Injured Worker is entitled to Disabled Workers' Relief Fund benefits from 12/01/1999 through 11/03/2012, and continuing, based on eligibility of Disabled Workers' Relief Fund benefits.

Counsel for the self-insuring employer contends the above-ordered Disabled Workers' Relief Fund benefits are inappropriate. Counsel contends the Administrator failed to determine the Injured Worker's eligibility for these benefits in a prompt manner. Counsel contends an unreasonable length of time has lapsed and the benefits should be limited to the two year limitation of Ohio Revised Code Section 4123.52. The employer's counsel's contention is not found persuasive.

> The Staff Hearing Officer finds the Injured Worker remains eligible for the Disabled Workers' Relief Fund benefits ordered herein. Further, the benefits are not limited by the two year period referenced in Ohio Revised Code 4123.52. The Tenth Appellate District Court of Appeals addressed this specific question in the decision set forth in The Goodyear Tire and Rubber Co. et al., v. The Ohio Bureau of Workers' Compensation 1999 Ohio App. LEXIS 4494. The Court rejected a contention that there is a two year limit on any back benefit award for Disabled Workers' Relief Fund benefits. Specifically, the Court found that the Administrator is not statutorily barred from awarding back Disabled Workers' Relief Fund benefits to Injured Workers and billing the self-insuring employers for said benefits. Accordingly, the Staff Hearing Officer finds the Injured Worker is entitled to Disabled Workers' Relief Fund benefits from 12/01/1999 through 11/03/2012 and continuing, based on eligibility of Disabled Workers' Relief Fund benefits.

{¶ 28} 17. Relator filed a request for reconsideration asking the commission to exercise its continuing jurisdiction arguing the BWC's failure to make inquiries to relator concerning claimant for 14 years, the doctrine of laches should be applied to a limited amount of back award to two years, and to R.C. 4123.52.

{¶ 29} 18. Following a hearing on May 21, 2013, the commission determined that it did not have authority to exercise continuing jurisdiction.

{¶ 30} 19. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 31} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion and this court should deny relator's request for a writ of mandamus.

{¶ 32} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 33} The facts in this case are not in dispute. Claimant sustained a work-related injury in 1975 and the DWRF provisions would likely apply to him once he turned 65 years of age and was no longer receiving SSD benefits. Claimant became eligible for

DWRF benefits December 28, 1999. It is further undisputed that it was not until November 7, 2012 that the BWC notified both claimant and relator that claimant became eligible for DWRF benefits on his 65th birthday and informed claimant that he was entitled to receive back payment in the amount of $121,442.86.

{¶ 34} Relator does not deny that it is statutorily required to reimburse the BWC dollar-for-dollar for all DWRF benefits paid to claimant. Relator's entire argument rests on its assertion that because the BWC failed to promptly notify relator that claimant was eligible to receive DWRF benefits, the BWC should be collaterally estopped from obtaining reimbursement from relator for any amounts owed to claimant beyond the two-year limitation provided in R.C. 4123.52.

{¶ 35} The BWC asserts that, as a self-insured employer, relator was and is responsible for maintaining all records of workers' compensation claims and has a duty to comply with all workers' compensation laws to make timely payments to its injured workers. Further, the BWC argues that, pursuant to this court's ruling in *Goodyear Tire & Rubber Co. v. Bur. of Workers' Comp.,* 10th Dist. No. 98AP-1153 (Sept. 28, 1999), R.C. 4123.52 does not apply to DWRF benefits.

{¶ 36} In 1953, the General Assembly enacted R.C. 4123.412, which created DWRF benefits. DWRF benefits are paid to injured workers who are permanently and totally disabled as a result of occupational injury or disease and whose workers' compensation benefits, when combined with SSD benefits, fall below a statutorily mandated amount.

{¶ 37} Originally, R.C. 4123.411 required the commission to levy an assessment against all employers at a specified rate. In 1986, the General Assembly amended R.C. 4123.411, dramatically altering the mechanism by which DWRF was funded. Pursuant to the amendment, non-self-insured private fund employers, county and taxing district employers, and the state of Ohio as an employer, remain subject to the employer payroll rate assessment. However, R.C. 4123.411(C) requires that self-insured employers directly compensate the BWC for all amounts paid to qualifying injured workers regardless of the date of their injury. Under this provision, the BWC makes DWRF benefits to the qualified injured workers and thereafter collects the payment from the self-insured employer.

> R.C. 4123.416 requires:
>
> The administrator of workers' compensation shall promptly require of each [self-insured] employer * * * a verified list of

the names and addresses of all persons to whom the employer is paying workers' compensation on account of permanent and total disability and the evidence respecting such persons as the administrator reasonably deems necessary to determine the eligibility of any such person to participate in the disabled workers' relief fund.

{¶ 38} Ohio Adm.Code 4123-17-29(B)(2) requires self-insured employers to be billed on a semi-annual basis for DWRF benefits paid to injured workers.

{¶ 39} Relator argues that its reimbursement to the DWRF fund is limited to the two-year look back of R.C. 4123.52, which provides, in pertinent part:

The commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor.

{¶ 40} For the reasons that follow, the magistrate finds relator's argument lacks merit.

{¶ 41} In *Goodyear Tire,* a group of self-insured employers brought a declaratory judgment action seeking a determination of their liabilities to the DWRF fund under the amendments to R.C. 4123.411 which altered the DWRF funding mechanism. These self-insured employers argued that the BWC lacked authority to bill them for DWRF benefits accrued to injured workers prior to the semi-annual billing period for which the bill is assessed, regardless of whether the funds were actually disbursed by the BWC during the billing period. In the alternative, they argued that, if the BWC is permitted to bill for accumulated unpaid benefits, a two-year statutory limit exists to limit how far back such payments may reach.

{¶ 42} This court rejected those arguments, stating:

Appellants initially contend that an employee's entitlement to DWRF payments should commence only upon the BWC's issuance of a determination of eligibility for subsidy based upon a shortfall in the claimant's combined workers' compensation and Social Security disability benefits. Under this interpretation, the BWC would have no statutory authority to make the large retroactive lump-sum payments to claimants for benefits accruing between the date of their eligibility for DWRF payments (based upon combined workers' compensation and social security benefits which fall below the statutory DWRF minimum) and the date upon

> which the BWC makes an actual determination of claimant's eligibility. We find no support for this proposition in the statutes governing DWRF benefits.

*Id.* at 2.

{¶ 43} This court specifically noted that an injured worker is entitled to receive DWRF benefits without filing an application. This court noted that DWRF benefits begin at the time an injured workers' specified workers' compensation and SSD benefits fall below the statutory floor and not at the time the injured workers' file was reviewed and evaluated by the BWC. Specifically, this court stated:

> Appellants alternatively argue that, if back DWRF can be paid by BWC, the period for which such back benefits could be paid, is limited by the express two-year statute of limitations upon changes to past awards by the Industrial Commission, R.C. 4123.52. DWRF benefits differ statutorily, however, from general workers' compensation benefits, which require a timely filed application. R.C. 4123.84 and 4123.85. In contrast, the above-cited language from the DWRF statutes establishes that there is no duty on the claimant to apply for DWRF benefits in order to be eligible, since eligibility is "without application" and governed solely by the formula set forth in R.C. 4123.414. We therefore reject appellants' contention that there is a two-year limit on any back benefit award for DWRF claimants.

*Id.* at 3.

{¶ 44} In reaching that conclusion, this court relied on several decisions from the Supreme Court of Ohio, including *Thompson v. Indus. Comm.,* 1 Ohio St.3d 244 (1982). In *Thompson,* the Supreme Court specifically determined that DWRF benefits are separate and distinct from workers' compensation benefits, and the fund is a separate entity from the state insurance fund. In *Wean Inc. v. Indus. Comm.,* 52 Ohio St.3d 266 (1990), the Supreme Court concluded that the application of the 1986 amendments to claims with injury dates prior thereto was not unconstitutional retroactively because the amendments only required the self-insured employer to pay a "current responsibility." As applied prospectively, self-insured employers were only responsible to reimburse the BWC for all past, present, and future employees eligible for DWRF benefits. In *Dayton Walther Corp. v. Indus. Comm.,* 10th Dist. No. 97APE06-746 (Apr. 30, 1998), this court

extended the reasoning of *Wean* to conclude that the term "current responsibility" addressed all current DWRF outlays regardless of the date of injury in relation to the date the employer became self-insured. The application of the above case law leads to only one conclusion: the commission did not abuse its discretion by requiring relator to reimburse the BWC for DWRF benefits paid to claimant beyond the two-year period provided in R.C. 4123.52.

{¶ 45} Relator makes several arguments urging this court to reconsider its determination that DWRF benefits are not compensation. Specifically, relator points to *McHale v. Indus. Comm.,* 63 Ohio App. 479 (3d Dist.1940), wherein that court found that payment by the commission of the fees to a physician attending to an injured worker constituted the payment of compensation awarded on the account of injury within the meaning of former R.C. 4123.52. Relator specifically points to the following language:

> The word "compensation" as used in Section 35 of Article II of the Constitution of Ohio, relating to workmen's compensation, comprehends all payments and disbursements of every character made by the Industrial Commission to or for the benefit of workmen and their dependents, for death, injuries or occupational diseases, occasioned in the course of such workmen's employment.

*Id.* at 484.

{¶ 46} For several reasons, the magistrate finds the *McHale* decision does not alter the outcome here.

{¶ 47} First, *McHale* was decided 40 years before the Supreme Court of Ohio's decision in *Thompson* and nearly 60 years before this court's decision in *Goodyear Tire*. Second, *McHale* involved that portion of R.C. 4123.52 which provides that no modification or change, finding or award shall be made with respect to disability compensation after ten years from the last payment of compensation or benefits. In such a situation, an injured worker must make an application or file a motion. However, because DWRF benefits are payable without the filing of an application, this court ruled that the two-year look back period did not apply.

{¶ 48} Relator also points to *Armco, Inc. v. N. Assur. Co. of Am.,* 99 Ohio App.3d 545 (12th Dist.1994). In that case, an insurance company argued that it was not liable to indemnify an employer for DWRF benefits because the insurance policy required it only

to indemnify for payments made as workers' compensation benefits. Citing *Thompson,* the insurance company argued that DWRF benefits are relief welfare and not workers' compensation.

{¶ 49} In *Armco,* the court stated that the Supreme Court of Ohio's determination in *Thompson* that DWRF benefits were not compensation was, at best, elusive noting that the court created this "fiction," "out of fear that a ruling declaring the DWRF program unconstitutional would make 'a cruel mockery of the laudable purpose [of the constitutional provision allowing for a workers' compensation program.]' *Id.,* 1 Ohio St.3d at 249." *Armco, Inc.* at 547. Despite this observation, the court followed the Supreme Court's decision and found that, although DWRF benefits were not workers' compensation, they were other benefits Armco was required to pay under the terms of its policy. The court was not asked to define the term compensation for purposes of the workers' compensation law.

{¶ 50} Relator also points to this court's decision in *Employers Reinsurance Corp. v. Worthington Custom Plastics, Inc.,* 109 Ohio App.3d 550 (10th Dist.1996). Similar to the *Armco* case, this court was asked to consider the express terms of agreements between insurance companies and self-insured employers. This court found that DWRF benefits were "benefits," as that term was used in the reinsurance policies. Just like the *Armco* case, this case did not involve consideration of or definition of DWRF benefits under the workers' compensation laws.

{¶ 51} Applying the above-discussed cases, the magistrate finds that relator's argument that the commission cannot award claimant DWRF benefits in excess of two years back lacks merit.

{¶ 52} Having determined that the commission could award claimant retroactive DWRF benefits beyond the two-year period, the magistrate now considers relator's argument that the doctrine of laches applies. For the reasons that follow, the magistrate disagrees.

{¶ 53} In order for the doctrine of laches to apply, one must establish: (1) an unreasonable delay or lapse of time in asserting a right, (2) the absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Case v. Indus. Comm.,* 28 Ohio St.3d 383 (1986).

Relator's argument is premised in part on the fact that the BWC conducted an internal claim inquiry in October 2005. At that time, the BWC had information that claimant had turned 65 years old 6 years earlier and relator asserts the BWC should have notified them at that time.

{¶ 54} The commission counters relator's argument noting that relator's status as a self-insured employer is a privilege and that relator has the ultimate responsibility for administering workers' compensation claims to its injured workers. The BWC asserts that relator, as claimant's employer, would have known his birth date and when he would turn 65 years of age. Further, relator would have known the relevance of turning 65 in terms of claimant's receipt of SSD benefits. The BWC argues that the responsibility lies with relator.

{¶ 55} It can be said that both relator and the BWC failed to properly administer claimant's claim. For several years, the BWC inquired about claimant's age and the rate at which he was being paid PTD compensation specifically to determine whether or not claimant was eligible for DWRF benefits. Likewise, relator was aware that claimant would likely become eligible for DWRF benefits when he turned 65 years of age because of the date of injury and the low rate at which he was being paid PTD compensation. The BWC failed to promptly notify relator that claimant had become eligible for DWRF benefits and relator failed to pay benefits which were owed to claimant. Relator appears to argue that, if the BWC forgets to mail a bill to an employer and enough time passes, the employer is no longer responsible for paying that bill. Relator owes claimant the money. Just because the BWC pays injured workers their DWRF benefits and then bills the employer for those sums does not change the fact that relator is the party ultimately liable to claimant for those amounts.

{¶ 56} Relator was not assessed a penalty for its failure to timely pay benefits nor has relator been charged interest on the benefits due and owed to claimant. While this is a large bill, there is no prejudice here where there is no dispute relator was obligated to pay the benefits. While relator will argue that this outcome is not fair, the magistrate asks if it would be fair to ask other employers to contribute the money to pay these benefits. That is what would happen if the money came from a different fund. To the extent that relator asserts that this money should come from the surplus fund, the magistrate

disagrees. The surplus fund is used to reimburse self-insured employers who pay money to an injured worker whose claim is ultimately disallowed. In that situation, the employer paid compensation it was determined was not owed to an injured worker. Here, there is no dispute: claimant was and is entitled to the money and relator is the party statutorily obligated to pay the money. It is unfortunate that the BWC failed to promptly notify relator; however, the magistrate finds that the commission did not abuse its discretion in finding that relator remained liable for those amounts. Because it was indicated that the claimant would receive 14 checks, relator may have been able to request that it reimburse the BWC in 14 payments. However, the payment of benefits to claimant was and is relator's responsibility.

{¶ 57} At oral argument, counsel for relator argued that it was unknown what rate the BWC used to calculate the back award, specifically pointing out that different rates would have applied for different years. Relator did not make this argument until now. Pursuant to *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997), this court should not consider relator's question at this time.

{¶ 58} Based on the forgoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in finding that relator was liable to reimburse the BWC for the entire amount of DWRF benefits paid to claimant because the two-year limitation of R.C. 4123.52 does not apply.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).