[Cite as *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.,* 137 Ohio St.3d 201, 2013-Ohio-4007.]

THE STATE EX REL. ESTATE OF SZIRAKI, APPELLANT, *v.* ADMR., BUREAU OF WORKERS' COMPENSATION ET AL., APPELLEES.

[Cite as *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.,*

137 Ohio St.3d 201, 2013-Ohio-4007.]

*Workers' Compensation—R.C. 4123.57(B)—Scheduled-loss benefits for loss of use of body parts—Requirement for filing of formal application—R.C. 4123.52(A)—Two-year limit on retroactive payment—Appellate court's denial of writ of mandamus affirmed.*

(No. 2011-0799—Submitted May 21, 2013—Decided September 18, 2013.)

APPEAL from the Court of Appeals for Franklin County, No. 10AP-267,

2011-Ohio-1486.

_____

**Per Curiam**.

{¶ 1} The estate of Dean E. Sziraki appeals from the judgment of the Tenth District Court of Appeals denying its request for a writ of mandamus that would require the Industrial Commission, appellee, to vacate its order for 104 weeks of scheduled-loss benefits under R.C. 4123.57(B) and to award benefits for 850 weeks for the loss of use of Dean's arms and legs.

{¶ 2} We agree with the court of appeals that the Industrial Commission did not abuse its discretion when it limited payment of the benefits to the two years preceding Dean's death, or 104 weeks, the amount that Dean would have been able to receive had he filed for the award on the date of his death. In addition, the court of appeals correctly concluded that the Bureau of Workers' Compensation, appellee, had no duty to award the benefits during Dean's lifetime in the absence of an application.

**{¶ 3}** Consequently, we affirm the judgment of the court of appeals denying the writ.

*Factual Background*

**{¶ 4}** Dean Sziraki was employed in his family's paving business when he was seriously injured in a one-car accident in the course of his employment on May 14, 1991. He suffered catastrophic brain and spinal-cord injuries. He spent the next 16 years as a quadriplegic and in a near-vegetative state in various hospitals and long-term-care facilities. The bureau allowed his initial claim for multiple trauma and spinal-cord injuries. The bureau paid for his medical and nursing-home expenses, and in doing so, it required periodic medical updates on his condition.

**{¶ 5}** In 1998, Marilyn B. Sziraki, Dean's mother and only next of kin, applied on his behalf for permanent-total-disability benefits under R.C. 4123.58(C) based on the loss of use of his arms and legs. In April 2002, the commission granted those benefits to begin March 20, 2002, the date of a recent medical report.

**{¶ 6}** On June 7, 2002, the bureau notified Marilyn that Dean was eligible to begin receiving the benefits but that the bureau was withholding payment until it received either a power of attorney or evidence of a court-ordered guardian for Dean. On November 1, 2002, Marilyn was appointed guardian over Dean's person only.

**{¶ 7}** On February 1, 2006, an attorney in the bureau's law department wrote to Marilyn and her attorney to try to resolve a problem that had arisen in paying the permanent-total-disability benefits due to Dean's incompetency and the lack of a guardian over Dean's estate to receive the payments. The bureau attorney also stated that Dean "may also be entitled to other benefits that [were] not addressed in [the] order." The letter asked Marilyn to respond within 30 days; if she did not, the bureau would refer the matter to the attorney general's office to

file a suggestion of incompetency for Dean with the appropriate probate court. There is no record that Marilyn contacted the bureau or that the bureau referred the matter to the attorney general for further action.

{¶ 8} Dean died on January 8, 2007. He had no surviving spouse and no dependents. The probate court appointed Marilyn as administrator of his estate, and the estate filed a claim for death benefits. The bureau allowed the claim for medical and funeral expenses and for accrued permanent-total-disability compensation from March 20, 2002, until the date of Dean's death. But the estate appealed because the death benefits did not include accrued compensation for scheduled-loss benefits pursuant to R.C. 4123.57(B) for the loss of use of Dean's four extremities.

{¶ 9} A district hearing officer directed the estate to file an application to determine whether the estate was eligible for these benefits. The estate filed a motion for the benefits. A district hearing officer awarded compensation under R.C. 4123.57(B) for the total loss of use of Dean's arms and legs for 850 weeks.[1] But due to the two-year limit on retroactive payment under R.C. 4123.52(A), the hearing officer limited the amount payable to a period of two years, or 104 weeks—from January 8, 2005, to January 8, 2007—the amount that Dean would have been able to receive had he filed for compensation on the date of his death.

{¶ 10} A staff hearing officer affirmed. The hearing officer ordered that "the estate of the deceased-claimant is hereby awarded 104 weeks of compensation, pursuant to [R.C.] 4123.57(B) and * * * 4123.60, representing the accrued compensation which the decedent might have received, but for his death." (Underlining sic.) The order stated that Dean would have been entitled to an award of 850 weeks of compensation had he filed during his lifetime, but because Dean had not filed, the estate was entitled to, at most, the accrued compensation

---

1. R.C. 4123.57(B) provides for 225 weeks of compensation for the loss of each arm and 200 weeks for the loss of each leg, for a total award of 850 weeks.

that Dean might have received had he filed the application on the date of his death, that is, two years of compensation. The remaining 746 weeks of requested compensation were unaccrued when Dean died and therefore not payable to his estate.

{¶ 11} The commission denied further review.

{¶ 12} The estate filed a complaint for a writ of mandamus asking the Tenth District Court of Appeals to order the commission to vacate its order for 104 weeks of scheduled-loss benefits and to award the full 850 weeks. In addition, the estate asserted that the bureau had abused its discretion when it failed to sua sponte award the scheduled-loss benefits during Dean's lifetime due to the absence of an application.

{¶ 13} A magistrate concluded:

(1) [The bureau] did not abuse its discretion when it did not sua sponte award Dean scheduled loss benefits during his lifetime; (2) neither the [bureau] nor the commission abused their discretion when an award of scheduled loss benefits was not paid to Dean's estate as part of the death benefits award; (3) the commission did not abuse its discretion by imposing a formal application requirement; and (4) the commission properly limited the award to two years preceding Dean's death and by only paying the compensation that would have accrued in that two year period.

{¶ 14} The court of appeals adopted the magistrate's findings of fact and conclusions of law and denied the writ. 2011-Ohio-1486.

{¶ 15} The estate's appeal as of right is now before the court.

*Analysis*

{¶ 16} To be entitled to a writ of mandamus, the estate was required to demonstrate that it had a right to the relief requested and that the respondents had a clear legal duty to grant the relief. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.2d 1075, ¶ 9; *State ex rel. Rouch v. Eagle Tool & Mach. Co.*, 26 Ohio St.3d 197, 198, 498 N.E.2d 464 (1986). "A mandamus action is thus appropriate where there is a legal basis to compel a public entity to perform its duties under the law. * * * Likewise, a writ of mandamus may lie if the public entity has abused its discretion in carrying out its duties." *Gen. Motors* at ¶ 9.

{¶ 17} "Scheduled loss" benefits are paid to an injured worker for the loss or loss of use of a body part according to a schedule in R.C. 4123.57(B). *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203; *State ex rel. Miller v. Indus. Comm.*, 97 Ohio St.3d 418, 2002-Ohio-6664, 780 N.E.2d 268, ¶ 7.[2]

{¶ 18} The estate contends that it is entitled to 850 weeks of scheduled-loss benefits, or at least the 816 weeks that Dean survived following his industrial accident, for Dean's loss of the use of his arms and legs. It is undisputed that no application for such benefits was filed during Dean's life, and the bureau made no award prior to his death. In addition, the parties do not dispute that Dean was medically qualified for the award.

{¶ 19} In support of its request for a writ, the estate argues that the bureau had a duty to sua sponte award scheduled-loss benefits during Dean's life even in the absence of an application requesting them. Had the bureau done so, up to 850 weeks of benefits would have accrued during Dean's life and would have been payable to the estate as a death benefit. The estate maintains that Dean's claim

---

2. This paragraph reflects the modification made upon reconsideration. *See* ___ Ohio St.3d ___, 2013-Ohio-5285, ___ N.E.2d ___.

file was replete with evidence that Dean, a quadriplegic since his accident, qualified for an award for the loss of use of all four extremities. Furthermore, according to the estate, bureau policy authorized it to award benefits using methods other than the application process.

{¶ 20} In particular, the estate relied on the following policy published on-line on the bureau's website:

> A scheduled loss award does not have to be requested on a Motion (C-86). A [scheduled-loss] award can be requested on the First Report of Injury, or identified during the claim investigation. The [Claim Service Specialist] may also allow and pay a [scheduled-loss] award without application if medical evidence is provided that supports payment of the scheduled loss award.

www.ohiobwc.com/basics/infostation/InfostationContent.asp?Item=1.2.3.11. This statement is no longer on the bureau's website. The bureau concedes that the policy existed as quoted.

{¶ 21} The estate contends that when an injured worker cannot apply for benefits because he is permanently incompetent and has never granted a power of attorney, it becomes the duty of the bureau to determine and pay the scheduled-loss benefits even in the absence of an application. Thus, under the circumstances present in this case, where Dean was unable to personally file and had no one acting on his behalf, the estate maintains that the bureau had a duty to award the scheduled-loss benefits during Dean's lifetime despite the absence of an application.

{¶ 22} Although the bureau argues that R.C. 4123.57(B) requires an application, it concedes that the on-line policy cited by the estate allows it to award benefits for scheduled loss in the absence of an application. Nevertheless,

the bureau insists that the policy is discretionary and does not create a duty on the bureau to act.

{¶ 23} Furthermore, the bureau maintains that it would have been unreasonable to award benefits when there was no one authorized to receive payment of them. Here, the bureau was already withholding the permanent-total-disability benefits previously awarded to Dean because there was no guardian over Dean's estate to accept payment of the award.

{¶ 24} R.C. 4123.57, which provides for compensation for partial disability, including scheduled-loss awards, repeatedly refers to an application: "the employee *may* file an *application* with the bureau of workers' compensation for the determination of the percentage of the employee's permanent partial disability * * *"; "Whenever the *application* is filed, the bureau shall send a copy of the application to the employee's employer * * *"; if there is conflicting evidence, "the administrator shall send the *application*, along with the claimant's file, to the district hearing officer" for a hearing. (Emphasis added.)

{¶ 25} Although the statute uses the word "may" in reference to the act of filing an application, which is generally construed to render the act optional or permissive, it appears that R.C. 4123.57 clearly contemplates an application as the act that begins the process. The application triggers notice to the employer and initiates the bureau's review of the claim. Thus, the statute's use of the permissive term "may" does not eliminate the necessity of an application as the vehicle for starting the process of determining eligibility for scheduled-loss benefits.

{¶ 26} The bureau's on-line policy cited by the estate is likewise written in permissive, not mandatory, terms (the bureau "may" allow a scheduled-loss award without application). More significantly, we note that a bureau policy does not have the same effect as law and does not operate to impose a duty upon the bureau to act. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 567, 697

7

N.E.2d 198 (1998) (agency rules and policies are subordinate to statutes; they merely facilitate the policy set forth in the statutes to be administered by the agency). Thus, this policy, when considered in light of R.C. 4123.57, did not create a duty on the part of the bureau to act in the absence of an application seeking scheduled-loss benefits.

{¶ 27} Consequently, we agree with the court of appeals that the estate failed to demonstrate that the bureau had a clear legal duty to award scheduled-loss benefits to Dean during his lifetime in the absence of an application.

{¶ 28} The estate further argues that based on the extent of Dean's injuries, the benefits should have accrued from the date of injury, because that is when Dean sustained the requisite physical loss. *See Moorehead*, 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203. Thus, at least 816 weeks and as much as 850 weeks of scheduled-loss benefits would have accrued, unpaid, at the time of Dean's death and were payable as a death benefit.

{¶ 29} In the absence of an application and award made during Dean's lifetime, no benefits accrued, and there were none unpaid at the time of Dean's death. *Estate of McKenney*, 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694, at ¶ 7. An injured worker's estate is eligible to receive only the compensation that had accrued but was not yet paid to the injured worker before his death. *Id.*; R.C. 4123.60. Thus, we agree with the court of appeals that the commission did not abuse its discretion when it determined that the estate could recover as a death benefit only the compensation that had accrued at Dean's death.

{¶ 30} Next, the estate argues that the commission abused its discretion when it required the estate to file an application before the commission could consider whether to award scheduled-loss benefits. According to the estate, the commission lacked authority to impose this requirement because R.C. 4123.57 does not require an application.

**{¶ 31}** Furthermore, the estate maintains that the commission ordered the filing so that it could impose the limitation period in R.C. 4123.52, permitting the commission to limit payment of the award to 104 weeks, or the two years preceding Dean's death. R.C. 4123.52(A) provides, "The commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor." *See also State ex rel. Drone v. Indus. Comm.*, 93 Ohio St.3d 151, 155, 753 N.E.2d 185 (2001) ("the statute of limitations in R.C. 4123.52 requires an application to trigger it * * *").

**{¶ 32}** We have already determined that R.C. 4123.57 contemplates filing an application for an award of scheduled-loss benefits and that the bureau had no duty to award the benefits in the absence of an application. Thus, we cannot say that the commission abused its discretion when it ordered the estate to file an application to initiate the process of determining the estate's eligibility for a scheduled-loss award under R.C. 4123.57(B).

**{¶ 33}** Once an application was filed, the estate was entitled only to an award "not exceeding the compensation which the decedent might have received, but for his death, for the period prior to the date of his death." R.C. 4123.60. Because R.C. 4123.52 precludes the commission from awarding compensation for a back period in excess of two years before the application was filed, the commission did not abuse its discretion when it ordered that the "award to the <u>estate</u> of the deceased-claimant is to begin with a <u>start date</u> of 01/08/2005 (two years prior to the date of the deceased-claimant's death, assuming that the Injured Worker had filed the application on the date of his death) through 01/08/2007, only." (Underlining sic.)

**{¶ 34}** Finally, the estate contends that the commission should have ordered that the award be paid concurrently, not consecutively. This court has held that it is within the commission's discretion to determine whether payments

are made consecutively or concurrently. *Estate of McKenney*, 110 Ohio St.3d 54, 2006-Ohio-3562, 850 N.E.2d 694, at ¶ 20. And we have approved the commission's policy of paying benefits consecutively rather than concurrently. *Swallow v. Indus. Comm.*, 36 Ohio St.3d 55, 57, 521 N.E.2d 778 (1988). Consequently, the commission did not abuse its discretion when it ordered that the benefits be paid to the estate consecutively rather than concurrently.

### *Conclusion*

{¶ 35} The estate failed to demonstrate that it had a clear legal right to the relief requested. The commission's decision to award scheduled-loss benefits but limit payment of the award to 104 weeks is supported by evidence in this record. Consequently, the commission did not abuse its discretion, and the court of appeals properly denied mandamus relief.

{¶ 36} We affirm the judgment of the court of appeals.

Judgment affirmed.

O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'CONNOR, C.J., and PFEIFER and O'NEILL, JJ., dissent.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 37} This appeal involves a case in which the Bureau of Workers' Compensation knew that claimant Dean Sziraki was fully disabled, that he was entitled to additional benefits that he was not receiving, and that he would not receive those benefits until there was a guardian over his estate.

{¶ 38} And the bureau knew that no one was seeking that guardianship despite repeated discussions with Dean's mother, Marilyn Sziraki, about the necessity of doing so. In fact, the bureau threatened to refer the case to the attorney general if Dean's family did not seek the proper guardianship. The bureau failed to act on that threat, however.

{¶ 39} A year later, Dean died without receiving any of the additional benefits to which he was entitled.

{¶ 40} Given the context of this case, I would hold that the bureau had a clear legal duty to act. Specifically, it had a duty to refer Dean's case to the attorney general to pursue the proper guardianship or to award benefits to the estate, even in the absence of an application. At this point, the former course is no longer necessary or appropriate, because the estate is available as a proper payee. I would further hold that the appellate court's decision affirming the bureau's failure to award benefits during Dean's lifetime was arbitrary, unreasonable, and unconscionable. I therefore dissent.

### ANALYSIS

{¶ 41} There is no dispute that the bureau knew that Dean was medically eligible for an award pursuant to R.C. 4123.57(B) for the scheduled loss of use of both arms and both legs. From the date of Dean's accident until he died, the bureau was involved in, and paid for, his medical care and nursing-home expenses. As part of this process, the bureau required periodic medical updates of Dean's condition, through which it was informed of Dean's near-total helplessness.

{¶ 42} The records updating his condition are replete with references to Dean's quadriplegia, inability to communicate, and many other severe medical problems.[3] One record describes him as "essentially in a vegetative state." Thus, the bureau knew that Dean was medically eligible under R.C. 4123.57(B) for an award for the scheduled loss of use of both arms and both legs.

{¶ 43} The bureau also knew that because of the severity of Dean's debilitated condition, he was unable to seek benefits on his own behalf or solicit

---

3. In her findings of fact, a magistrate in the Tenth District Court of Appeals noted that Dean's claim was allowed for an array of conditions, including intracerebral hemorrhage, pneumonia, respiratory failure, "coma and stupor," multiple fractures including "cervical fracture with cord injury," brain injury, and other injuries and conditions. 2011-Ohio-1486, ¶ 14.

help for that purpose. And the bureau knew that he had no guardian or other representative acting for him. In fact, as early as 1997, the bureau's notes raised questions about the need for a power of attorney for finances (even though Dean was probably not competent to confer such a power). The bureau's notes even indicate that one of its representatives planned to contact Marilyn and the nursing home where Dean was being cared for regarding the need for a power of attorney.

{¶ 44} Eight years later, in January 2005, the bureau's notes again refer to the bureau's inability to pay permanent-total-disability compensation because no one had a power of attorney authorizing receipt of the payments on Dean's behalf. Those notes reflect that a representative contacted Marilyn again, but the representative reported that "the mother does not want the money. She was to have the brother be [sic, obtain] the [power of attorney] but to date no one will do so."

{¶ 45} It was not until more than a year later, in February 2006, that the bureau finally wrote to Marilyn in an attempt to resolve the bureau's continuing inability to pay the benefits that were already awarded because there was no guardian over Dean's estate to receive payment. In that letter, the bureau stated that if Marilyn failed to respond, the bureau intended to refer the matter to the attorney general's office to file a suggestion of incompetency with the probate court to get a guardian of the estate appointed. The record does not disclose any response from Marilyn. But despite its ultimatum, the bureau took no further action to pursue a guardianship for Dean, even though the bureau clearly knew that he was entitled to additional benefits that he was not receiving, that he would never receive them unless someone acted, and that all attempts to get his family to act had failed.

{¶ 46} The majority does not dispute these facts, but nevertheless affirms the judgment of the court of appeals, emphasizing that R.C. 4123.57(B) contemplates an application even though it does not mandate one. In so doing,

12

the majority ignores the language of R.C. 4123.57, which states that "the employee *may* file an application with the bureau of workers' compensation * * *." (Emphasis added.) That language makes clear that filing an application is permissive, not mandatory.

{¶ 47} The majority also ignores the General Assembly's mandate, and our own precedent, that we must liberally construe R.C. Chapter 4123 in favor of employees. R.C. 4123.95; *State ex rel. Walker v. Indus. Comm.*, 58 Ohio St.2d 402, 403, 390 N.E.2d 1190 (1979).

{¶ 48} Moreover, while contending that R.C. 4123.57 "requires" an application, the bureau has conceded that it has the discretion to award scheduled-loss compensation even if no application is filed. Indeed, it acknowledges that it advertised that very discretion to the public through postings on its own website, informing claimants that no application or motion is necessary and that a scheduled-loss award can be identified during claim investigation. Bureau of Workers' Compensation, Infostation, www.ohiobwc.com/basics/infostation/ InfostationContent.asp?Item=1.2.3.11 ("temporarily disabled" when access was attempted on Aug. 21, 2013).

{¶ 49} Given the bureau's authority to act in the absence of an application, its full knowledge that Dean was too disabled to seek benefits on his own,[4] and its assertion that it would refer the case to the attorney general's office for a suggestion of incompetency if Marilyn did not act, I would hold that the bureau had a clear legal duty to act by either exercising its discretion to confer benefits in the absence of an application or to pursue the referral to the attorney

---

4. In 2002, when Dean was awarded compensation for statutory permanent total disability based on the loss of use of both arms and both legs under R.C. 4123.58(C), the bureau had both ample medical evidence demonstrating the loss of use of Dean's arms and legs *and* the opportunity to examine that evidence for purposes of a loss-of-use award under R.C. 4123.57(B). It did not. In its 2006 letter, the bureau even acknowledged that Dean may be entitled to other benefits not addressed in the 2002 order.

general's office so that a proper guardian could be appointed to act on Dean's behalf.

{¶ 50} In urging affirmance, the bureau emphasizes that it is the claimant's responsibility to diligently pursue compensation. *See State ex rel. Welsh v. Indus. Comm.*, 86 Ohio St.3d 178, 180, 712 N.E.2d 749 (1999). Though that is generally a true statement of law, it is of little guidance in this case.

{¶ 51} There is absolutely no suggestion in *Welsh* or the briefs filed in support of the parties' positions in that case that the bureau was aware that Welsh was entitled to additional benefits but not receiving them because he was medically incapable of pursuing his claim and had no guardian to act on his behalf. And there is no suggestion in *Welsh* that the bureau had asserted that it would act if he or his guardian failed to do so.

{¶ 52} Other cases cited by the bureau are also inapposite. In those cases, we reaffirmed our rule not to allow exceptions to R.C. 4123.52, the two-year statute of limitations applied to Dean's estate. *See, e.g., State ex rel. Baker v. Indus. Comm.*, 97 Ohio St.3d 267, 2002-Ohio-6341, 779 N.E.2d 214, ¶ 7-8 (rejecting argument that the statute of limitations should not apply when claimant spent six years establishing entitlement to temporary-total-disability benefits before successfully applying for permanent-total-disability benefits); *State ex rel. Justice v. Dairy Mart, Inc.*, 94 Ohio St.3d 34, 759 N.E.2d 1252 (2002) (rejecting arguments that the statute of limitations should not apply when the claimant's injuries were very severe). But like *Welsh*, neither *Baker* nor *Justice* nor any other case decided by us has been predicated on facts and circumstances like those presented in this appeal. We do no service to the people or the law by reflexively applying broad rules of utilitarian law that work well in most cases but fail to address nuances and contexts we have not previously considered.

{¶ 53} In this appeal, we are presented with the fact that the bureau knew that it had awarded some benefits to a worker whose work-related quadriplegia

and inability to communicate rendered him incapable of pursuing his own interests. The bureau further knew that the worker was entitled to more benefits if given the proper guardian. We also know that the bureau knew that neither the worker nor anyone acting on his behalf had filed an application for the benefits, but that it had the discretion to award those benefits even without the application. And we know that the bureau informed the worker's mother, in writing, that it would refer the case to the attorney general if she did not act, but failed to follow through. Despite the bureau's ability, knowledge, and opportunity to make a scheduled-loss award during Dean's lifetime, the majority holds that the bureau had no duty to act to confer an award prior to Dean's death. I cannot agree.

**{¶ 54}** As an arm of the state, the bureau had a duty to act to pursue a referral of Dean's case to the attorney general to secure the proper guardianship, given that it knew Marilyn was not doing so and had not done so despite ample time and opportunity. Comment, *The Attorney General as Consumer Advocate: City of York v. Pennsylvania Public Utility Commission*, 121 U.Pa.L.Rev. 1170, 1175 (1973) ("The doctrine of *parens patriae* confirms the power of the state to protect persons under a disability or incapable of managing their own affairs").

**{¶ 55}** Rather than reinforcing the bureau's dereliction of its duty by affirming this judgment, I would reverse the judgment of the court of appeals, grant a writ of mandamus, and order the commission to award the full 850 weeks of scheduled-loss benefits, not just the 104 weeks that were awarded because of the statute of limitations. I would do this not to benefit the relatives of Dean Sziraki but to ensure that the welfare of future participants in the workers' compensation system will not be jeopardized by the system's inaction in the face of a clear duty.

PFEIFER and O'NEILL, JJ., concur in the foregoing opinion.

_____

Law Offices of Kurt M. Young, L.L.C., and Kurt M. Young, for appellant.

Michael DeWine, Attorney General, and Patsy A. Thomas, Assistant Attorney General, for appellees.

_____