NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5011

THE STATE OF OHIO EX REL. AARON'S, INC., APPELLANT, *v.* OHIO BUREAU OF WORKERS' COMPENSATION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Aaron's, Inc. v. Ohio Bur. Of Workers' Comp.,* Slip Opinion No. 2016-Ohio-5011.]

*Workers' compensation—Ohio Adm.Code 4123-17-17(C)—Bureau of Workers' Compensation did not abuse discretion when it applied audit adjustment to the 24 months prior to the current payroll where substantial misclassifications occurred over a significant period of time and resulted in considerable underpayment of premiums to state fund.*

(No. 2014-1641—Submitted January 5, 2016—Decided July 20, 2016.)

APPEAL from the Court of Appeals for Franklin County, No. 13AP-170, 2014-Ohio-3425.

_____

**Per Curiam.**

{¶ 1} This action by appellant, Aaron's, Inc., f.k.a. Aaron Rents, Inc. ("Aaron's"), arose as a result of a limited writ of mandamus granted in *State ex rel. Aaron Rents, Inc. v. Ohio Bur. of Workers' Comp.*, 129 Ohio St.3d 130, 2011-Ohio-3140, 950 N.E.2d 551, ordering appellee, the Bureau of Workers' Compensation, to explain why it had denied the company's request that the bureau's order reclassifying some of the company's employees for purposes of workers' compensation premiums be applied solely prospectively.

{¶ 2} On remand, the administrator's designee concluded that the bureau appropriately exercised its discretion under Ohio Adm.Code 4123-17-17(C) to apply the reclassification retroactively. The administrator's designee relied on evidence demonstrating the magnitude and scope of the company's prior reporting discrepancies that resulted in a large underpayment of premiums.

{¶ 3} Aaron's filed this action for mandamus relief. The court of appeals concluded that the evidence in the record supported the bureau's decision and that no internal policy of the bureau created a clear legal duty requiring the bureau to apply the classifications solely prospectively. 10th Dist. Franklin No. 13AP-170, 2014-Ohio-3425, ¶ 5-6. For the reasons that follow, we agree, and we affirm the judgment of the court of appeals.

*Background*

{¶ 4} When a business applies for workers' compensation coverage, the bureau classifies the occupation or industry by degree of hazard according to the categories established by the National Council on Compensation Insurance and incorporated into the Ohio BWC State Insurance Fund Manual. *See* R.C. 4123.29(A)(1). There are two types of classifications. The "basic" or "manual" classification describes the business of an employer. Ohio Adm.Code 4123-17-08(B)(1); *see also* Ohio Adm.Code 4123-17-02(A). The "standard exception" classification describes an occupation that is common to many businesses. Ohio

Adm.Code 4123-17-08(B)(2). For example, clerical office employees, not otherwise classified (code 8810), are defined as those workers "whose duties are confined to keeping the books and records of the risk [i.e., of the employer], and conducting correspondence, and drafting, or who are engaged wholly in office work where such books and records are kept, having no other duties of any nature in or about the risk's premises." Ohio Adm.Code 4123-17-08(B)(2) and 4123-17-09.

{¶ 5} As we have explained:

> The [BWC State Insurance Fund Manual] designates the basic rate that an employer must pay, per $100 in payroll, to secure workers' compensation coverage for its employees. Each occupational classification has a corresponding basic dollar rate. This base rate applies to all employers within the classification and effectively spreads the total loss within the classification among all members.

*State ex rel. Roberds, Inc. v. Conrad*, 86 Ohio St.3d 221, 222, 714 N.E.2d 390 (1999). Once the bureau assigns one or more classifications, it is the employer's responsibility to correctly report premium and payroll data to the bureau. *See id*. The bureau has the right to audit an employer's records to verify the correctness of its payroll reports used to determine premiums. Ohio Adm.Code 4123-17-17(C).

*Facts*

{¶ 6} Aaron's, a Georgia corporation, began doing business in Ohio in 1992, primarily as a furniture-rental business. When Aaron's applied for workers' compensation coverage, the bureau assigned the business the basic occupational classification of 8044 (store: furniture & drivers) and the standard-exception classification of 8810 (clerical office employees, not otherwise classified). Aaron's

placed its employees into one of those two categories in listing its payroll for the bureau.

{¶ 7} In 2006, the bureau conducted a routine audit of the company's records. The auditor apparently concluded that Aaron's had incorrectly listed many of its employees as 8810 clerical workers instead of placing them under the business's basic classification of 8044. However, the audit report was not finalized, in part because it did not pass the bureau's quality-review process. Therefore, Aaron's was not notified of its results.

{¶ 8} The bureau initiated a new audit and on March 18, 2008, issued its audit report. As a result of the 2008 audit, the bureau added several classifications to Aaron's payroll, applied them retroactively to July 1, 2004, and billed Aaron's for more than $2 million in back premiums.

{¶ 9} Aaron's filed an administrative protest of both the 2008 audit findings and the retroactive application of the new classifications. Following a hearing, the bureau's adjudicating committee upheld the new classifications but limited their retroactive application to a period of two years.

## 2009 Complaint for Writ of Mandamus

{¶ 10} Aaron's filed a complaint in mandamus in the Tenth District Court of Appeals alleging that the bureau had abused its discretion when it failed to adequately explain why it rejected the company's request to apply the reclassifications solely prospectively. The court of appeals disagreed and denied the writ. We reversed that judgment and issued a limited writ of mandamus ordering the bureau to further consider the matter and to issue an amended order explaining why it decided to apply the reclassifications retroactively and not solely prospectively as Aaron's had advocated. *State ex rel. Aaron Rents, Inc.*, 129 Ohio St.3d 130, 2011-Ohio-3140, 950 N.E.2d 551, ¶ 13.

{¶ 11} Following a hearing on remand, the administrator's designee concluded that the bureau properly exercised its discretion under Ohio Adm.Code

4123-17-17(C) to apply the reclassification retroactively. The version of Ohio Adm.Code 4123-17-17(C) that was in effect at the time of the audit and hearing[1] provided:

> The bureau shall have the right * * * to inspect, examine or audit * * * employers for the purpose of verifying the correctness of reports made by employers of wage expenditures * * *. The bureau shall also have the right to make adjustments as to classifications, allocation of wage expenditures to classifications, amount of wage expenditures, premium rates or amount of premium. * * * Except as provided in Rule 4123–17–28 of the Administrative Code, no adjustments shall be made in an employer's account which result in increasing any amount of premium above the amount of contributions made by the employer to the fund for the periods involved, except in reference to adjustments for the semi-annual or adjustment periods ending within twenty-four months immediately prior to the beginning of the current payroll reporting period.

Former Ohio Adm.Code 4123-17-17(C), 2008-2009 Ohio Monthly Record 2-1840.

{¶ 12} The administrator's designee relied on the testimony of Charles Goellnitz, a bureau auditor, and the audit results showing that Aaron's had improperly reported a large percentage of its operational employees as clerical employees, resulting in its paying substantially less in premiums than it should have. The administrator's designee stated that "Goellnitz concluded that because of the scope of the reporting discrepancies, and the fact that the inaccurate reporting

---

[1] Amendments to Ohio Adm.Code 4123-17-17(C) that became effective on July 1, 2015, *see* 2014-2015 Ohio Monthly Record 2-991, changed its language slightly but would not result in a different outcome in this case.

resulted in a large underpayment of premiums, it would have been inappropriate to allow the employer to benefit from its inaccurate reporting of payroll."

*2013 Complaint for Writ of Mandamus*

{¶ 13} Aaron's filed the instant complaint in the Tenth District seeking a writ of mandamus regarding the January 17, 2012 order of the administrator's designee. Aaron's alleged that the bureau's decision to bill it for back premiums was an abuse of discretion and violated Ohio law.

{¶ 14} The case was referred to a magistrate, who concluded that the administrator's designee appropriately exercised his discretion under Ohio Adm.Code 4123-17-17(C) in ordering the reclassifications to be applied retroactively. The magistrate noted that the administrator's designee did not find that Aaron's was at fault or that it intentionally misreported its payroll. The magistrate nevertheless concluded that the magnitude of the misclassification was a sufficient basis for the bureau to deny the request to apply the audit findings solely prospectively.

{¶ 15} Aaron's objected, arguing that the magistrate's conclusion was not supported by the record and that the bureau's internal policy was to "go prospective on an audit" unless there was intentional wrongdoing or disregard on the part of the employer.

{¶ 16} The court of appeals rejected these arguments, adopted the magistrate's decision, and denied the writ.

{¶ 17} This matter is before the court on an appeal as of right filed by Aaron's.

*Legal Analysis*

{¶ 18} To be entitled to the extraordinary remedy of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty on the part of the bureau to provide the relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117

Ohio St.3d 480, 2008-Ohio-1593, 884 N.E.3d 1075 ¶ 9. When an order is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order. *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997).

{¶ 19} Aaron's alleges that it is entitled to relief in mandamus because the bureau's explanation for retroactive application of the reclassification was arbitrary and contrary to bureau policy. According to Aaron's, the magnitude of its misreporting was due to the bureau's inaction and failure to notify Aaron's of any problems after the 2006 audit. Aaron's maintains that it did not knowingly misclassify employees and, had it known of a problem with its reporting, it would have corrected any error or, in the alternative, become self-insured. Finally, Aaron's contends that the bureau's explanation is inconsistent with bureau policy.

{¶ 20} The bureau contends that under Ohio Adm.Code 4123-17-17(C), it had the right to make adjustments to correct errors and to apply those adjustments up to 24 months preceding the employer's current payroll period and that in doing so, it was not required to prove intentional wrongdoing on the part of the employer.

{¶ 21} We agree. The bureau properly exercised its discretion under Ohio Adm.Code 4123-17-17(C). The evidence supported the bureau's decision, and no internal policy imposed a clear legal duty on the bureau to apply the reclassification solely prospectively. The version of Ohio Adm.Code 4123-17-17(C) that was in effect at the time of the audit provided the bureau with authority to apply audit adjustments for the 24 months immediately prior to the beginning of the "current payroll reporting period." *See* 2008-2009 Ohio Monthly Record 2-1840.

{¶ 22} The purpose of retroactive adjustment is to correct an error or mistake, even if the employer was not at fault for the mistake. *See State ex rel. Granville Volunteer Fire Dept., Inc. v. Indus. Comm*., 64 Ohio St.3d 518, 521, 597 N.E.2d 127 (1992). The bureau did just that in *State ex rel. Harry Wolsky Stair Builder, Inc. v. Indus. Comm*., 58 Ohio St.3d 222, 569 N.E.2d 900 (1991). In that

case, an employer sought a refund of more than three years' worth of overcharged premiums following a change of occupational classification. The employer argued that the incorrect classification had been the bureau's fault. We affirmed the bureau's decision that regardless of fault, refunds are limited to the 24 months immediately prior to the current payroll-reporting period, citing former Ohio Adm.Code 4121-7-17(C).[2] *Harry Wolsky Stair Builder* at 223. The rules makes no distinction between employer and bureau error. *Id.*; *see also Granville Volunteer Fire Dept.* at 521 (although the employer blamed the bureau for its overpayment of premiums from 1977 through 1986, the bureau was limited under former Ohio Adm.Code 4121-7-17(C) to reimbursing for only two years' worth).

{¶ 23} Furthermore, in 2008, Aaron's acknowledged in a statement before the bureau's adjudicating committee that consistent with the application of Ohio Adm.Code 4123-17-17(C), the postaudit premium adjustment should include the payroll periods for the prior two years.

{¶ 24} Consequently, the bureau's retroactive application of the reclassification for a period of 24 months was a proper exercise of its discretion under Ohio Adm.Code 4123-17-17(C).

{¶ 25} The evidence supported the bureau's decision. The administrator's designee justified the retroactive application of the reclassification based on "the magnitude of th[e] misreporting." The administrator's designee relied on the testimony of the auditor, Mr. Goellnitz, that Aaron's was reporting approximately 76 percent of its payroll as clerical when the audit "revealed that only six percent of the employer's payroll was clerical in nature." The administrator's designee noted that the "audit revealed that the employer was reporting a very different distribution of employees to insurers in other states, even though both the Bureau and the outside insurers use the same classification system."

---

[2] Former Ohio Adm.Code 4121-7-17(C) is the predecessor of Ohio Adm.Code 4123-17-17(C). *Roberds*, 86 Ohio St.3d at 223, 714 N.E.2d 390.

**{¶ 26}** Finally, the argument that the bureau's decision was inconsistent with its policy to apply audit adjustments solely prospectively lacks merit. Other than references in the internal bureau e-mails identified at the hearing, Aaron's does not identify or produce a specific bureau policy that requires the bureau to apply audit adjustments prospectively only. Nevertheless, even if Aaron's had produced an internal policy, this court has held that policy alone does not create a legal right or duty. *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.*, 137 Ohio St.3d 201, 2013-Ohio-4007, 998 N.E.2d 1074, ¶ 26; *see also State ex rel. NHVS Internatl., Inc. v. Ohio Bur. of Workers' Comp.*, 10th Dist. Franklin No. 13AP-356, 2014-Ohio-5522, ¶ 8 (bureau policy does not create a legal right or duty); *State ex rel. Bledsoe v. Marion Steel Co.*, 10th Dist. Franklin No. 02AP-193, 2002-Ohio-6835, ¶ 9 (internal memo does not create a legal duty or a legal right to the relief requested). Consequently, no internal policy imposed a clear legal duty on the bureau to apply the reclassification solely prospectively.

**{¶ 27}** Therefore, the bureau did not abuse its discretion when it applied the audit adjustment to the 24 months prior to the current payroll period, as authorized in former Ohio Adm.Code 4123-17-17(C), where substantial misclassifications occurred over a significant period of time and resulted in considerable underpayment of premiums to the state fund.

**{¶ 28}** We affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents in an opinion that LANZINGER and KENNEDY, JJ., join.

_____

**O'DONNELL, J., dissenting.**

**{¶ 29}** Respectfully, I dissent.

**{¶ 30}** Aaron's, Inc., appeals from a judgment of the Tenth District Court of Appeals denying its request for a writ of mandamus to compel the Bureau of Workers' Compensation to vacate its order applying the reclassification of several Aaron's employees retroactively and to remove the entire back billing on the company's account. In my view, Aaron's is entitled to relief because the bureau abused its discretion when it applied the 2008 audit adjustments retroactively and ordered Aaron's to pay $1.6 million in back billing on its account.

**{¶ 31}** To obtain relief in mandamus, a party must establish a clear legal right to the relief requested, a clear legal duty to provide that relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Turner Constr. Co. of Ohio v. Indus. Comm.*, 142 Ohio St.3d 310, 2015-Ohio-1202, 29 N.E.3d 969, 50¶ 10.

**{¶ 32}** The standard used by the majority is, "When an order is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order." Majority opinion at ¶ 18 citing *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584, 679 N.E.2d 300 (1997). The majority also noted that the administrator's designee justified the retroactive application based on the magnitude of the company's misreporting. Majority opinion at ¶ 25

**{¶ 33}** However, the order issued by the bureau in this case is neither adequately explained nor based on any evidence to justify a retroactive application of the 2008 audit results. Rather, without explanation the bureau of workers' compensation patently acted contrary to its usual and customary practice of prospectively applying audit changes and instead applied the employee classification audit changes from the 2008 audit retroactively without any basis to do so, as evidenced by e-mails from personnel in the bureau because the bureau itself admits there is no evidence of intentional wrongdoing by Aaron's.

**{¶ 34}** In its final order, the bureau cited the testimony of Charles Goellnitz, a bureau auditor, that it would have been inappropriate to allow Aaron's to benefit from its inaccurate reporting of payroll due to the scope of the reporting inaccuracies that resulted in a large underpayment of premiums, and that the bureau exercised its discretion under Ohio Adm. Code 4123-17-17(C) and ordered that the audit findings be applied retroactively.

**{¶ 35}** However, that order fails to adequately explain the bureau's decision to apply the audit adjustments retroactively for two reasons: first, the bureau does not account for its failure to notify Aaron's of the results of its 2006 audit which could have prevented Aaron's from underpaying the $1.6 million that the bureau now orders Aaron's to pay; and second, the bureau does not explain why it is deviating from its internal policy of applying audit adjustments retroactively *only when* there is evidence of knowing or intentional wrongdoing. In this instance, there is no indication that Aaron's knowingly or intentionally misrepresented its payroll and the bureau has made no finding in that regard.

**{¶ 36}** In 2006, the bureau audited Aaron's and found that it had incorrectly classified many of its employees as clerical workers. However, the bureau failed to complete a report of the audit because the audit did not pass the bureau's quality review process, and the bureau never notified Aaron's that it was misclassifying its employees. In 2008, the bureau conducted a second audit, added new classification codes to the company's payroll, applied them retroactively to July 1, 2004, in violation of the Ohio Administrative Code, and billed Aaron's for more than $2 million. Aaron's appealed that decision, and the bureau's adjudicating committee limited the retroactive adjustment to a period of two years to conform with the Administrative Code. *See* former Ohio Adm.Code 4123-17-17(C), 2008-2009 Ohio Monthly Record 2-1840 (limiting retroactive classification to a period of two years). As a result of that adjustment however, the bureau claimed that Aaron's

still owed $1,667,360.81, despite the fact that prior to 2008, the bureau never informed Aaron's that it had misclassified some of its employees.

{¶ 37} Had the bureau informed Aaron's after the 2006 audit that the company was misclassifying some of its employees as clerical workers, Aaron's could have avoided the underpayment of its premiums. Instead, the bureau took no further action until the 2008 audit, and Aaron's continued to pay premiums as it had in the past, having no indication from the bureau that it should have reclassified its employees as a result of the bureau's 2006 audit.

{¶ 38} In addition, the bureau has a policy of applying adjustments retroactively only where there is an indication that the employer knew it was improperly classifying employees. Evidence of this policy consists of e-mails between employees of the bureau pointing out their uncertainty with respect to whether the adjustments in this case should or should not be applied retroactively.

{¶ 39} Michael Glass, the bureau's director of employer compliance, wrote in an e-mail to Goellnitz:

> Normally we would go prospective on an audit if we felt the employer didn't know or couldn't have known proper reporting requirements or BWC failed to assign the code to their policy, etc. We must have felt that Aaron Rents knew how to report correctly and had the code. This can sometimes be established through a previous audit or some other documented communication with the employer.

{¶ 40} In another email to Glass from Joy Bush, the bureau's executive director of employer management services, Bush stated, "The only exception I think there would be to prospective is a *very obvious case* of disregard to previous audit instructions." (Emphasis added.)

**{¶ 41}** After the bureau completed its 2008 audit, however, its fraud unit conducted an investigation that concluded:

> Upon review of the claims filed and documents received during the audit process and investigation it has been found that Aaron Rents improperly reported several job classifications under the clerical manual. However, *based on the documents received, there is currently no evidence to prove that Aaron Rents had knowledge of or intentionally misreported payroll.*

(Emphasis added.)

**{¶ 42}** The e-mail from Michael Glass tellingly articulates that the bureau normally would "go prospective" on audits when the employer did not know proper reporting requirements and asserts that the bureau must have felt Aaron's knew how to report correctly as can be established through a previous audit or other documented communication. But here, there was no communication from a previous audit or other communication in this case.

**{¶ 43}** In addition, the Joy Bush e-mail confirms that the only exception to a prospective audit reclassification is a *very obvious case of disregard of previous audit instructions.* Plainly, the bureau never communicated any previous audit instructions to Aaron's resulting from its 2006 audit, and that point is not contested and therefore there is no "very obvious case of disregard of previous audit instructions," and that fact dispels Glass's assumption that the bureau "must have felt" that Aaron's knew how to report correctly.

**{¶ 44}** And finally, the bureau's fraud unit admitted that no evidence existed to prove Aaron's had knowledge or intended to misrepresent its payroll.

**{¶ 45}** These are telling admissions from the bureau that militate strongly against retroactive application of employee classifications and favor adhering to the policy of the bureau regarding prospective application of audit results.

**{¶ 46}** While the majority emphasizes the magnitude of the misreporting as evidence to justify retroactive application of the employee classification changes, that view is contradicted most directly by the bureau's fraud unit and the conclusion reached in its report.

**{¶ 47}** It is apparent that Aaron's never received previous audit instructions or any other communication from the bureau indicating that it was misclassifying its employees. Thus, there is relevant material evidence that the bureau deviated from its normal policy despite a lack of evidence that Aaron's knowingly or intentionally misreported payroll.

**{¶ 48}** Accordingly, because the bureau failed to adequately explain its order applying the audit adjustments retroactively and back billing Aaron's for $1.6 million and because the bureau's own e-mails and the conclusion of its fraud unit demonstrate that no evidence exists to prove that Aaron's knowingly or intentionally misrepresented its payroll, I would conclude that the bureau abused its discretion in retroactively applying its reclassification order, reverse the judgment of the court of appeals, and grant the writ to compel the bureau to vacate its order applying the employee reclassification retroactively and to remove the back billing on that account.

LANZINGER and KENNEDY, JJ., concur in the foregoing opinion.

_____

Fisher & Phillips, L.L.P., Daniel P. O'Brien, and Nicole H. Farley, for appellant.

Michael DeWine, Attorney General, and Cheryl J. Nester, Assistant Attorney General, for appellee.

_____

14