[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Manor Care, Inc. v. Bur. of Workers' Comp.*, Slip Opinion No. 2020-Ohio-5373.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5373

THE STATE EX REL. MANOR CARE, INC., APPELLANT, *v.* BUREAU OF WORKERS' COMPENSATION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Manor Care, Inc. v. Bur. of Workers' Comp.*, Slip Opinion No. 2020-Ohio-5373.]

*Workers' compensation—To maintain the privilege of self-insurance, an employer must pay all compensation as required by Ohio's workers' compensation laws—An employer's obligation to reimburse Bureau of Workers' Compensation for relief-fund benefits is separate and distinct from its obligation to pay injured workers their awarded compensation—Relief-fund benefits may not be used to "offset" an incorrect payment of permanent-total-disability compensation—Court of appeals' judgment affirmed.*

(No. 2019-1046—Submitted August 4, 2020—Decided November 25, 2020.)

APPEAL from the Court of Appeals for Franklin County, No. 17AP-864, 2019-Ohio-2578.

_____

**FRENCH, J.**

{¶ 1} Appellant, Manor Care, Inc., a self-insured employer, made lump-sum payments under protest to two injured workers, in order to correct its long-term underpayment of their permanent-total-disability ("PTD") compensation. Manor Care then asked appellee Bureau of Workers' Compensation for reimbursement from the Disabled Workers' Relief Fund ("relief fund"), arguing that Manor Care's underpayment of PTD compensation should be offset by the bureau's corresponding overpayment of relief-fund benefits to the same employees, for which Manor Care had reimbursed the bureau as part of its annual assessments. The bureau denied the request. Manor Care sought a writ of mandamus ordering the bureau to reimburse it for the lump-sum PTD-compensation payments; the Tenth District denied the writ. Manor Care appealed and moved for oral argument. We affirm the Tenth District's judgment and deny the motion for oral argument.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Work Injuries and Benefit Awards

{¶ 2} After sustaining injuries while working for Manor Care, appellees Mozell Kelly and Katalin Palotay were each awarded PTD compensation in the mid-1990s. Self-insured employers like Manor Care pay PTD compensation directly to injured workers. R.C. 4123.46(B).

{¶ 3} Kelly and Palotay were also awarded relief-fund benefits. The General Assembly created the relief fund in 1953 to supplement the monthly income of workers whose PTD-compensation rates, combined with the rates of any social-security disability compensation, fall below the minimum set forth in R.C. 4123.413 (adjusted annually for inflation). *State ex rel. Martin v. Connor*, 9 Ohio St.3d 213, 459 N.E.2d 889 (1984); *see also* R.C. 4123.412; R.C. 4123.413. The relief fund is held by the treasurer of state and is separate from the state workers' compensation fund. R.C. 4123.412. The bureau pays benefits from the relief fund

directly to all injured workers who participate in that fund, regardless of their employer's status as a self-insured or state-fund employer. R.C. 4123.412; R.C. 4123.411(C). How an employer contributes to the relief fund, however, does depend on its status: state-fund employers pay an annual assessment on their gross payroll, while the bureau bills each self-insured employer semiannually for all relief-fund payments made to that employer's relief-fund participants, dollar-for-dollar. R.C. 4123.411(B) and (C).

{¶ 4} Accordingly, Kelly and Palotay received PTD compensation directly from Manor Care, but they received relief-fund payments from the bureau. Manor Care then paid to the bureau, as part of its assessments, amounts equal to the relief-fund benefits Kelly and Palotay received. Each year, the bureau sent Kelly and Palotay, as well as Manor Care, an order setting forth the relief-fund benefits to which the participants were entitled, based on their PTD-compensation and social-security-disability-compensation rates. The orders stated that the injured worker or the employer could appeal within 14 days. Manor Care did not appeal any of the orders regarding Kelly or Palotay.

### B. 2014 Audit

{¶ 5} In 2014, the bureau's Self-Insured Department conducted a compliance audit of Manor Care's PTD-compensation claims, in which it determined that Manor Care had been underpaying Kelly's and Palotay's PTD compensation from the outset, because their initial PTD-compensation rates had been set too low. As a corollary, the bureau had, from the outset, been overpaying Kelly's and Palotay's relief-fund benefits. Manor Care asserts that the PTD-compensation underpayment equaled the relief-fund-benefit overpayment.

{¶ 6} The record does not demonstrate whether the Industrial Commission or Manor Care established Kelly's and Palotay's initial, incorrect PTD-compensation rates. The scant evidence on that question is conflicting: though the commission's 2015 *Procedural Guide for Self-Insured Claims Administration*

states, "The [Industrial Commission] calculates the PTD declared rate in PTD claims determined prior to April 19, 1999," the commission's mid-1990s' orders awarding compensation to Kelly and Palotay do not set forth the rates.

{¶ 7} In September 2014, the bureau notified Manor Care, by e-mail, of the PTD-compensation underpayments. Separately, it issued orders notifying Kelly and Palotay of the relief-fund-benefit overpayments and stating that the overpaid amounts would be recouped by withholding future cost-of-living increases from Kelly's and Palotay's relief-fund payments from the date the overpayment was determined.

{¶ 8} In January 2015, the bureau stated that it would revoke Manor Care's self-insured status unless Manor Care made lump-sum payments to Kelly and Palotay to make up for its underpayment of their PTD compensation. In support of its position, the bureau cited Ohio Adm.Code 4123-19-03(K)(7), which provides that to maintain the privilege of self-insurance, an employer must "pay all compensation as required by the workers' compensation laws of the state of Ohio." Manor Care made the lump-sum payments to Kelly and Palotay under protest, asserting that its reimbursement of the bureau for the overpaid relief-fund benefits offset its underpayment of PTD compensation.

### C. Postaudit Administrative Proceedings

{¶ 9} Manor Care asked the commission to exercise continuing jurisdiction and determine its obligations. The commission held a hearing, at which Manor Care asked it to vacate the orders declaring the relief-fund-benefit overpayments, find Manor Care not liable for the PTD-compensation underpayments, and order the bureau to reimburse Manor Care from the relief fund for its lump-sum PTD-compensation payments to Kelly and Palotay.

{¶ 10} The staff hearing officer ("SHO") vacated the relief-fund-benefit-overpayment orders but concluded that he lacked the authority to order the bureau to reimburse Manor Care for the lump-sum PTD-compensation payments. Manor

4

Care filed an appeal of the SHO's order but voluntarily dismissed it a few days later.

{¶ 11} Manor Care then sent a letter to the director of the bureau, requesting reimbursement for the lump-sum payments. The director rejected the request. Manor Care appealed to the bureau's Self-Insured Review Panel, which held a hearing and denied the appeal. Manor Care then appealed to the administrator of the bureau. The administrator upheld the panel's decision, concluding:

> [The relief fund] is a separate fund created by statute for a specific purpose, to provide supplemental benefits to injured workers with low PTD rates of compensation. The employer's obligation to reimburse [the bureau] for [relief-fund] benefits is separate and distinct from its obligation to pay injured workers their awarded compensation. [Relief-fund benefits] cannot be used to "offset" an incorrect payment of PTD, which is the relief requested by the employer.

### D. Mandamus Action

{¶ 12} In December 2017, Manor Care filed this action in the Tenth District, alleging that the bureau "erred, acted unlawfully and abused its discretion by requiring Manor Care to, in effect double-pay the alleged PTD underpayment to Claimants and refusing to reimburse, or alternatively credit, Manor Care for the PTD underpayment amount." It sought a writ of mandamus "finding Manor Care entitled to equitable restitution" and ordering the bureau to reimburse it from the relief fund or alternatively to grant a credit against Manor Care's relief-fund assessments, in the amount of the PTD-compensation underpayment.

{¶ 13} The Tenth District determined that while the bureau and Manor Care both "operated under a mutual mistake of fact * * *, [Manor Care] was a self-

insured employer and in the best position to correct that mistake." 2019-Ohio-2578, ¶ 10. The court denied the writ, concluding that Manor Care "has failed to demonstrate clear and convincing evidence that it has a right to reimbursement or that [the bureau] has a duty to pay reimbursement." *Id.*

## II. ANALYSIS

### A. *Mandamus Standard*

{¶ 14} Mandamus relief is appropriate only if a relator establishes "a clear legal right to the relief requested, a clear legal duty on the part of the bureau to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Aaron's, Inc. v. Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, 68 N.E.3d 757, ¶ 18. The relator must make this showing by clear and convincing evidence. *State ex rel. WFAL Constr. v. Buehrer*, 144 Ohio St.3d 21, 2015-Ohio-2305, 40 N.E.3d 1079, ¶ 12. "When an order is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order." *Aaron's Inc.* at ¶ 18.

### B. *Manor Care Has Not Established a Clear Legal Right to Relief*

{¶ 15} Manor Care identifies no authority granting a clear legal right to the relief it seeks: a lump-sum payment from the relief fund or a credit against future relief-fund contributions for all of its participants to offset its lump-sum PTD-compensation payments to Kelly and Palotay. R.C. 4123.412, which governs disbursements from the relief fund, provides for payments from the fund to qualified injured workers, but it makes no provision for payments to other parties. Manor Care cites no authority authorizing payments from the relief fund to an employer, let alone granting a clear legal right to that form of relief. Manor Care's assertion that the commission was at fault for establishing Kelly's and Palotay's initial, erroneous PTD-compensation rates, which the record does not establish by clear and convincing evidence in any event, is therefore inapposite.

{¶ 16} Moreover, Manor Care's claim to relief rests on its argument that the bureau abused its discretion by not merely making an "accounting adjustment" to allow Manor Care's PTD-compensation underpayment to be offset by its payment of assessments reimbursing the bureau for the overpaid relief-fund benefits, rather than requiring it to make lump-sum PTD-compensation payments. Amici curiae Ohio Chamber of Commerce and Ohio Self-Insurers Association similarly argue that the bureau should have merely provided for "an equitable adjustment, namely a finding of the underpayment offset by the overpayment." However, PTD compensation and relief-fund benefits are separate and distinct statutory creatures serving different purposes. *See Thompson v. Indus. Comm.*, 1 Ohio St.3d 244, 251, 438 N.E.2d 1167 (1982); *State ex rel. Ford Motor Co. v. Indus. Comm.*, 10th Dist. Franklin No. 13AP-762, 2015-Ohio-181, ¶ 44.

{¶ 17} PTD compensation is provided for under R.C. 4123.58; relief-fund benefits are provided for under R.C. 4123.412. Self-insured employers pay PTD compensation directly to employees, R.C. 4123.35(B), 4123.58, while the bureau pays workers directly from the relief fund, and self-insured employers then reimburse the relief fund for those payments, R.C. 4123.411(C), 4123.412. PTD compensation is "compensation" that self-insured employers are required to provide in order to maintain their self-insured status under Ohio Adm.Code 4123-19-03(K)(7), while relief-fund payments are not, *see Thompson* at 251 and *Ford Motor Co.* at ¶ 44-51. Likewise, R.C. 4123.35(B) requires self-insured employers to provide PTD compensation "equal to or greater than" that provided by the state fund, but it contains no such requirement with respect to relief-fund benefits.

{¶ 18} Most importantly, Manor Care cites no authority imposing on the bureau a clear legal duty to deem overpaid relief-fund benefits de facto PTD compensation. R.C. 4123.412 provides for payments from the relief fund "in amounts to each participant as is provided in [R.C.] 4123.414," i.e., in the amounts of the *relief-fund* benefits to which each participant is entitled. Manor Care cites

no authority permitting the bureau to treat relief-fund-benefit payments as PTD compensation, let alone imposing a clear legal duty to do so. The bureau therefore did not abuse its discretion by rejecting Manor Care's proposed accounting adjustment and instead requiring Manor Care to correct its PTD-compensation underpayment by making lump-sum payments to Kelly and Palotay.

{¶ 19} As alleged in its complaint, Manor Care seeks a claim for equitable restitution. But the issuance of a writ of mandamus depends on the existence of a clear legal—not equitable—right. *State ex rel. Habe v. S. Euclid*, 56 Ohio St.3d 117, 119, 564 N.E.2d 483 (1990). And that right must be created by the General Assembly, not this court. *State ex rel. Perry Twp. Bd. of Trustees v. Husted*, 154 Ohio St.3d 174, 2018-Ohio-3830, 112 N.E.3d 889, ¶ 13 ("This court cannot create a legal duty enforceable in mandamus; only the General Assembly has that authority"). Manor Care has not identified any statutory provision granting a clear legal right to its requested relief.

{¶ 20} Our decision, however, does not prevent Manor Care from pursuing alternative avenues of redress. Starting from the mid-1990s, the bureau paid relief-fund benefits to Kelly and Palotay to supplement their PTD compensation. And Manor Care complied with its statutory duty to reimburse the bureau dollar-for-dollar for those relief-fund payments. R.C. 4123.411(B) and (C). It defies logic and offends notions of fairness that Manor Care must pay $78,897.34 to correct the underpayment of PTD compensation to Kelly and Palotay without any corresponding recovery for the relief-fund overpayments that Manor Care made for decades. While we acknowledge the constraints on our authority to issue the requested relief in mandamus, our decision imposes no constraints on the equitable powers of other courts.

### III. ORAL ARGUMENT

{¶ 21} In a direct appeal, the granting of a request for oral argument is subject to our discretion. S.Ct.Prac.R. 17.02(A). In exercising that discretion, we

consider whether the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals. *See State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23.

{¶ 22} Manor Care argues that we should hold oral argument because this case is of "tremendous import for self-insured employers and the Ohio business community as evidenced by the Ohio Self-Insurers Association's and Chamber of Commerce's Amicus participation." It also argues that no oral argument was held in the court of appeals and that the "cause of justice" would therefore benefit from holding oral argument here.

{¶ 23} We deny the motion. Manor Care's arguments do not address the factors set forth above. Importance of the case to the parties and those similarly situated is not the same as a case of great *public* importance. Further, as the bureau notes, the lack of oral argument below is not a relevant factor. And the briefs in this case adequately explain the facts and the parties' arguments.

## IV. CONCLUSION

{¶ 24} For the foregoing reasons, we affirm the Tenth District's judgment and deny the motion for oral argument.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, and DEWINE, JJ., concur.

DONNELLY and STEWART, JJ., concur in judgment only.

———————————

Kegler, Brown, Hill & Ritter, Co., L.P.A., David M. McCarty, Randall W. Mikes, and Jane K. Gleaves, for appellant.

Dave Yost, Attorney General, and Douglas R. Unver, Assistant Attorney General, for appellee Bureau of Workers' Compensation.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging reversal for amici curiae Ohio Chamber of Commerce and Ohio Self-Insurers Association.

_____